SARAH WOODARD, Plaintiff-Appellant and Cross-Appellee, v. DAVID KRANS *et al.*, Defendants-Appellees and Cross-Appellants.

Second District No. 2—91—1008

Opinion filed September 15, 1992.

692

Philip A. Nicolosi and Brent D. Blair, both of Philip A. Nicolosi & Associates, of Rockford, for appellant.

G. Kimball MacCloskey, Jeffrey Spears, and David P. Faulkner, all of Lord, Bissell & Brook, and Douglas J. Pomatto, of Heyl, Royster, Voelker & Allen, both of Rockford, Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, and Hugh C. Griffin, of Lord, Bissell & Brook, of Chicago, for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Sarah Woodard, appeals the dismissal of her three-count amended complaint against defendants, David Krans, M.D., Rockford Anesthesiologists Associated (Rockford), and SwedishAmerican Hospital (the Hospital). The complaint alleged that, as a result of defendants' negligence, plaintiff contracted tuberculosis from Dr. Krans, an anesthesiologist, while the latter was performing electroshock therapy upon plaintiff at the Hospital. The trial court held that plaintiff failed to submit a certificate of merit and medical report that complied with section 2—622 of the Code of Civil Procedure (section 2—622) (Ill. Rev. Stat. 1989, ch. 110, par. 2—622).

On appeal, plaintiff argues that (1) section 2—622 is unconstitutional; (2) the trial court abused its discretion in refusing to grant plaintiff discovery of certain records relating to the diagnosis and treatment of Dr. Krans' illness; (3) the trial court abused its discretion in refusing plaintiff leave to submit an amended certificate of merit and medical report; and (4) the court erred in holding that count II of the complaint sounded in healing art malpractice, thus requiring compliance with section 2—622, rather than in ordinary negligence.

Defendants cross-appeal, arguing that the trial court erred in (1) granting plaintiff 90 days from the filing of the complaint to supply the documentation needed under section 2—622 (see Ill. Rev. Stat. 1989, ch. 110, par. 2—622(a)(2)); and (2) granting plaintiff an additional 30 days in which to file the needed documentation.

On January 4, 1991, plaintiff filed her original one-count complaint for medical malpractice. Plaintiff alleged the following facts. During the summer of 1988, Dr. Krans, a partner in Rockford, administered electroshock therapy to plaintiff at the Hospital. On January 5, 1989, plaintiff tested positive for tuberculosis. Plaintiff contracted tuberculosis from Dr. Krans while she was his patient. During this treatment period, Dr. Krans knew and the other defendants knew or should have known that Dr. Krans was ill. Dr. Krans was negligent in continuing to anesthetize patients while he was ill, and Rockford and the Hospital were negligent in allowing him to do so and in not inquiring into the nature of his illness. Defendants' negligence proximately caused plaintiff's tuberculosis and resultant injuries, pain and suffering, and medical expenses.

In an affidavit attached to the complaint, plaintiff's attorney stated that he had reviewed some of the records of Dr. Krans' treatment of plaintiff; that plaintiff's condition was not reasonably known to her until January 5, 1989; that it was possible nonetheless that the complaint was time barred; and that because of the possible running of the limitations period, plaintiff's attorney had been unable to obtain the medical consultation required by section 2—622.

On February 5, 1991, plaintiff moved to amend her complaint, stating that upon further consideration she believed she also had causes of action against all defendants for common-law negligence and for negligence based on *res ipsa loquitur*. The amended complaint, filed February 14, 1991, alleged the same facts as the original complaint and added the common-law negligence and *res ipsa loquitur* theories as counts II and III, respectively. Count III, although not employing the term *"res ipsa loquitur,"* also alleged that the operation of plaintiff's electroshock treatment was entirely within the control of one or more of the defendants and that the plaintiff did not voluntarily contribute to her exposure to tuberculosis other than by presenting herself for treatment.

On February 5, 1991, plaintiff filed a "bill of discovery" alleging that most of the information necessary to her cause of action was entirely within the control of one or more of the defendants. Plaintiff requested that the trial court temporarily suspend section 2—622's "90 day period for obtaining an expert affidavit" (see Ill. Rev. Stat.

1989, ch. 110, par. 2—622(a)(2)). Plaintiff requested further that the court order defendants to produce any and all records which would disclose "the dates and means by which Dr. Krans was examined, diagnosed or treated for tuberculosis." Also, plaintiff asked the court to order the defendants to answer interrogatories that she appended to her bill of discovery. These interrogatories asked *inter alia* about the date that Dr. Krans was diagnosed with tuberculosis, any examinations and treatment he received thereafter, the date that any defendant knew of Dr. Krans' illness, and the nature of any procedures that defendants used to protect Dr. Krans' patients.

On February 25, 1991, Dr. Krans and Rockford moved to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619). The motion argued that plaintiff had failed to comply with section 2—622 in the following respects: (1) plaintiff did not and in good faith could not certify, as required by section 2—622(a)(2), that she *could not* have obtained the required consultation before the running of the statute of limitations; (2) the amended complaint did not include any certificate of merit; and (3) the amended complaint, though purportedly based on *res ipsa loquitur*, failed to comply with the requirements of section 2—622(c) that (a) plaintiff certify that she was relying on the doctrine of *res ipsa loquitur*, and (b) plaintiff provide the report of a reviewing health professional stating that, in the opinion of the reviewing professional, negligence had occurred in the course of medical treatment.

To bolster their argument that plaintiff was not entitled to invoke the 90-day extension provided by section 2—622(a)(2), Dr. Krans and Rockford attached two exhibits to their motion. Exhibit "A" is a letter dated December 27, 1988, from Rockford and the Hospital to plaintiff. The letter informed plaintiff of the following. Rockford and the Hospital had jointly determined that "during a procedure at [the Hospital] on 8/03/88, 9/2/88 & 9/6/88 you were treated by an anesthesiologist who has recently been diagnosed as having active tuberculosis. Consequently, you may have been exposed to tuberculosis during your surgery." All patients treated at local hospitals by this anesthesiologist were being contacted. The anesthesiologist was currently undergoing treatment and was not involved in patient care. Because plaintiff risked contracting tuberculosis "in this type of situation," the Hospital and Rockford had arranged for her to obtain a free tuberculosis screening.

Exhibit "B" is an affidavit of Terry Robins, "administrator" of Rockford. Robins stated that on June 14, 1989, Nancee Melquist, a Hospital employee, told Robins by phone that plaintiff's attorney had

contacted Melquist regarding plaintiff's claimed exposure to tuberculosis; that Melquist told Robins that plaintiff's attorney would be "sending a letter on behalf of the patient regarding damages"; and that on June 14, 1989, plaintiff's attorney telephoned Robins and told the latter of plaintiff's claim and of a letter on this matter that plaintiff's attorney would be sending Robins.

On March 5, 1991, the Hospital also moved to dismiss plaintiff's complaint for failure to comply with section 2—622. The Hospital argued that, at the time plaintiff filed her original complaint, her counsel had been aware for over a year and one-half of her potential cause of action and that this was enough time to obtain the required medical report. The Hospital therefore asserted that plaintiff's complaint should be dismissed with prejudice because (1) plaintiff had failed to file any affidavit or medical report with her amended complaint; and (2) plaintiff was not entitled to request 90 additional days pursuant to section 2—622(a)(2) because she had had ample time to obtain the required consultation before the running of the limitations period.

The Hospital included an affidavit from its risk manager, James L. Roberts. Roberts stated that in June 1989 his department received a letter from John C. Thomalla, the legal assistant to plaintiff's attorney. In the letter, a copy of which was appended to Roberts' affidavit, Thomalla advised Roberts that the law firm of Philip A. Nicolosi & Associates was representing plaintiff in "a claim that arises out of an incident which caused [plaintiff] to become exposed to a tuberculosis bacteria [sic]." Thomalla's letter asked Roberts to advise plaintiff's law firm of who would be handling the matter for the Hospital and to send, pursuant to plaintiff's enclosed release form, any medical reports relative to plaintiff's treatment. Roberts stated further in his affidavit that on July 10, 1989, he referred Thomalla to Rockford Anesthesiologists Association; since July 10, 1989, Roberts had not heard from anyone on behalf of plaintiff.

Defendants supplemented their motions to dismiss with the affidavit of Nancee Melquist, who stated that on or about June 14, 1989, while employed as assistant risk manager for the Hospital, she received a call from Paul Nicolosi of Philip A. Nicolosi & Associates. Nicolosi told her that the firm was representing plaintiff and asserting a claim against the Hospital on her behalf.

On March 28, 1991, the trial court heard argument on the motions to dismiss. The court denied plaintiff's motion to stay the running of the 90-day period of section 2—622(a)(2) pending further argument.

On April 2, 1991, plaintiff moved to extend the 90-day period, stating that through no fault of her own, circumstances had arisen

preventing her from obtaining the required medical report on time. At the April 11, 1991, hearing on the motion, plaintiff's attorney explained that plaintiff's treating physician had initially agreed to provide a medical report. However, upon returning from his vacation a few days before the hearing, the physician, himself now a defendant in a medical malpractice suit, withdrew from any further involvement in plaintiff's case. Since then plaintiff's attorneys had contacted other physicians who might be willing to provide the necessary report. The court concluded that plaintiff had shown good cause for an extension of time. The court denied the motions to dismiss and granted plaintiff an additional 30 days (the maximum suggested by plaintiff's counsel) for plaintiff to comply with section 2—622.

On April 21, 1991, Brent D. Blair, plaintiff's attorney of record, filed his affidavit. Blair stated that Dr. Alfred Muller had reviewed the records in the case, consulted with Blair and prepared a written report. Based on these facts, Blair believed that plaintiff had a meritorious cause of action for medical malpractice.

Blair also submitted Dr. Muller's report. The doctor stated that he was a physician licensed to practice medicine in all its branches, had reviewed the records in the case, and believed that plaintiff had a reasonable and meritorious cause of action against Dr. Krans and the Hospital. Dr. Muller believed that defendants' omissions or carelessness could have caused plaintiff to get tuberculosis from Dr. Krans during anesthesia. Specifically, Dr. Krans may have known that he was not feeling well and should therefore have sought tests to determine whether he had a disease that he could communicate to patients; the Hospital and Rockford each should have had a screening procedure to detect infectious diseases among staff members and should have required annual tuberculosis testing such as many localities require for teachers.

All defendants moved to dismiss the complaint with prejudice. Defendants argued that both the attorney's certificate and Dr. Muller's report failed to comply with section 2—622. Defendants maintained that Blair's affidavit was defective because it (1) did not state that Dr. Muller was knowledgeable in the relevant issues involved in the particular action; (2) did not state that Dr. Muller had practiced or taught within the last six years in the same area of health care that was at issue in plaintiff's case; (3) did not state that Dr. Muller was qualified by experience or demonstrated competence in the subject of the case; and (4) did not certify that plaintiff was relying on the doctrine of *res ipsa loquitur*.

Defendants also asserted that Dr. Muller's report was fatally defective in that it (1) did not identify the standard of care applicable to any of the defendants in this case; and (2) gave no factual basis for its determinations of any defendant's negligence. At the hearing on the motion, held June 13, 1991, defendants added that the report was defective in that it did not state that plaintiff had a meritorious cause of action against Rockford. Plaintiff replied that she had in substance met the requirements of section 2—622 even if her proffered documentation did not meet the "exact language" of the statute. Her counsel conceded that Dr. Muller's report did not say anything about whether plaintiff had a meritorious cause of action against Rockford.

The court agreed with defendants that plaintiff had not complied with the statute. On June 13, 1991, the court dismissed the complaint with prejudice.

On July 11, 1991, plaintiff moved to clarify and reconsider the dismissal order. Plaintiff first asked the court to state whether it was dismissing count II, which sounded in common-law negligence rather than medical malpractice. Plaintiff also asked the court to reconsider its ruling because (1) the Appellate Court, First District, had recently held section 2—622 unconstitutional and, although the second district had upheld the statute, both of these cases were pending before the Illinois Supreme Court; (2) plaintiff was denied discovery that was necessary for her to determine whether her claim had merit; (3) Dr. Muller made as thorough a review as possible given the available information; and (4) the court should allow plaintiff to amend her affidavit and report. Plaintiff submitted no proposed amendments with her motions or at the August 8, 1991, hearing on the motions.

At this hearing, the trial judge stated that count II alleged "healing art malpractice." Therefore, along with the rest of the complaint, count II was dismissed with prejudice for failure to comply with section 2—622. On August 8, 1991, the trial court entered a written order denying plaintiff's motions to clarify and reconsider.

Plaintiff timely appealed. Defendants then filed notices of cross-appeal, purportedly appealing from the trial court's April 11, 1991, ruling that denied defendants' original motion to dismiss and extended the time for plaintiff to comply with section 2—622.

■ Before we turn to the merits of plaintiff's appeal, we must address two preliminary matters. First, the Hospital has moved to strike portions of plaintiff's statement of facts, arguing that plaintiff has made assertions that are not supported by the record (see 134 Ill. 2d R. 341(e)(6)). This court ordered the motion taken with the case. Insofar as plaintiff's statement of facts is unsupported by the record,

we grant the Hospital's motion. We have reviewed the record and will not consider any improper factual assertions. See *Cato v. Attar* (1991), 210 Ill. App. 3d 996, 998.

■ Second, we must examine our jurisdiction to hear defendants' cross-appeals. Although plaintiff has not raised the issue, we are bound to do so *sua sponte*. (*Archer Daniels Midland Co. v. Barth* (1984), 103 Ill. 2d 536, 539.) Defendants assert that they are appealing the nonfinal order of April 11, 1991, denying their original motions to dismiss. However, subject to exceptions not relevant here, this court has jurisdiction to hear appeals only from final orders. 134 Ill. 2d R. 301.

The only final order in this case was the dismissal of the complaint. In dismissing the entire complaint with prejudice, the trial court granted defendants all that they sought, albeit not for all the reasons they urged. Because defendants received an entirely favorable judgment, their cross-appeal is impermissible. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 386; *Ruddock v. First National Bank* (1990), 201 Ill. App. 3d 907, 910-11.) On our own motion, therefore, we dismiss the cross-appeals and strike the "Reply Brief" filed by Dr. Krans and Rockford.

The cross-appeals are not only unauthorized but unnecessary. As we may affirm the trial court on any basis warranted by the record, defendants need not cross-appeal to present their alternative grounds for affirmance. (*Material Service*, 98 Ill. 2d at 386-87; *People ex rel. Hartigan v. Knecht Services, Inc.* (1991), 216 Ill. App. 3d 843, 852-53; *Ruddock*, 201 Ill. App. 3d at 911.) We shall therefore consider those grounds in the context of plaintiff's appeal.

■ Plaintiff argues first that section 2—622 is an unconstitutional infringement on the judicial power. We summarily reject this argument, as our supreme court has held that section 2—622 is constitutional. *DeLuna v. St. Elizabeth's Hospital* (1992), 147 Ill. 2d 57.

Plaintiff argues second that the trial court abused its discretion in refusing her request for limited discovery of Dr. Krans' medical records. Plaintiff argues that without these records a reviewing health professional could not reasonably determine the meritoriousness of her claim.

Although plaintiff sets out this argument at some length in her brief (including assertions not supported by the record), she fails to support this argument with any case authority. Under the waiver rule, we may disregard argument unsupported by pertinent authority. 134 Ill. 2d R. 341(e)(7); *Spinelli v. Immanuel Lutheran Evangelical Con-*

*gregation, Inc.* (1987), 118 Ill. 2d 389, 401; *Poplar Grove State Bank v. Powers* (1991), 218 Ill. App. 3d 509, 516-17.

■ Even without waiver, plaintiff's argument must fail. Section 2—622, which affects procedure prior to the attachment of a court's jurisdiction (*McAlister v. Schick* (1992), 147 Ill. 2d 84, 95), allows only for discovery of the *plaintiff's* medical records. (Ill. Rev. Stat. 1989, ch. 110, pars. 2—622(a)(3), 8—2001.) Plaintiff has thus shown no basis for her attempt to obtain discovery before all defendants had appeared or were required to appear. 134 Ill. 2d R. 201(d).

Moreover, plaintiff has never responded to defendants' correct assertion that the patient-physician privilege (Ill. Rev. Stat. 1989, ch. 110, par. 8—802) and the Medical Studies Act (Ill. Rev. Stat. 1989, ch. 110, par. 8—2101 *et seq.*) protect most if not all of the information sought from discovery. See *Pritchard v. SwedishAmerican Hospital* (1989), 191 Ill. App. 3d 388, 397-405.

We recognize the truth in plaintiff's assertion that these exemptions may make it difficult, if not impossible, for her to file an affidavit and report in conformance with section 2—622. Indeed, even were there no section 2—622, the statutory restrictions on discovery of information regarding Dr. Krans' own treatment or the methods the Hospital took to protect its patients might well foreclose plaintiff from proving an otherwise meritorious case. However, as is true of exclusionary rules generally, the restrictions on discovery represent a considered judgment that interests of litigants such as plaintiff here must yield to other interests, in this case confidentiality, privacy and candid peer review within medical institutions. See *Pritchard,* 191 Ill. App. 3d at 399, 404.

Plaintiff does not argue, and we do not see, that any exemptions to the statutory privileges apply here. We conclude that the trial court properly denied plaintiff's requested discovery. To the extent that the statutory restrictions on discovery produce a harsh result, as plaintiff argues, this result inheres in the statute, and the remedy must be supplied by the legislature.

Plaintiff argues next that the trial court abused its discretion in dismissing her complaint and denying her leave to amend the complaint to conform to section 2—622. Plaintiff correctly notes that section 2—622 is intended primarily to foreclose frivolous medical malpractice suits at the pleading stage, not to block meritorious suits on narrow technical grounds. (*McAlister v. Schick* (1992), 147 Ill. 2d 84, 91; *Ebbing v. Prentice* (1992), 225 Ill. App. 3d 598, 601.) From this plaintiff reasons that, because defendants have never maintained that

her suit is frivolous, it should not be dismissed without any opportunity for a trial on the merits.

Besides arguing that dismissal without leave to amend was proper, defendants supply two other purported grounds to affirm the dismissal. First, defendants argue that plaintiff was never entitled to use the 90-day "safety valve" of section 2—622(a)(2) in the first place. Defendants reason that because plaintiff retained counsel for over a year before the complaint was filed, her counsel could not validly maintain that plaintiff could not obtain the required consultation before the statute of limitations.

■ We decline to affirm on this basis. The determination of whether plaintiff initially complied with section 2—622(a)(2) was for the discretion of the trial court, and we will not disturb the court's decision absent an abuse of discretion. (*Moss v. Gibbons* (1989), 180 Ill. App. 3d 632, 638.) Despite the substantial delay between plaintiff's retention of counsel and the filing of her complaint, defendants' assertion that plaintiff's counsel "manipulated" section 2—622(a)(2) rather than using that provision in good faith is utter speculation. The trial court accepted the assertion in plaintiff's counsel's affidavit that the extra time was necessary, and we are satisfied that this decision was reasonable.

Defendants argue second that the trial court lacked the authority to extend the period for filing the medical report beyond the 90 days specified by section 2—622(a)(2). Without citing relevant authority, defendants assert that, by providing a specific 90-day period in section 2—622(a)(2), the legislature intended that a medical malpractice plaintiff have only 90 days after the filing of the complaint to provide the required documentation.

■ This argument is patently without merit. The appellate court has already recognized that a trial court has the discretion to allow, for good cause, filings that are not timely even under the deadline provided in section 2—622(a)(2). (*Garland v. Kauten* (1991), 209 Ill. App. 3d 30, 35-36; *Wasielewski v. Gilligan* (1989), 189 Ill. App. 3d 945, 950-51; *Hauk v. Day* (1988), 167 Ill. App. 3d 758.) Such a construction is consistent not only with the principle that section 2—622 is to be construed liberally (*Ebbing*, 225 Ill. App. 3d at 601), but also with the trial court's power under both Supreme Court Rule 183 (134 Ill. 2d R. 183) and section 2—1007 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1007) to grant continuances for good cause. Defendants do not quarrel with the trial court's determination that the unexpected refusal of plaintiff's treating physician to supply

the needed report was "good cause" for the 30-day extension that plaintiff requested.

The issue, therefore, is whether the trial court abused its discretion in denying plaintiff leave to amend. Plaintiff maintains that because her suit is not frivolous, it should not be dismissed merely because of what she calls "formal" or "technical" deficiencies in the affidavit and report.

We cannot agree. We grant that plaintiff's case does not appear frivolous, except perhaps in the sense that the statutory restrictions on discovery (noted earlier) may make it extremely unlikely that plaintiff would prevail on the merits. Nonetheless, the Hospital itself introduced evidence that it had warned plaintiff that she may have contracted tuberculosis at the Hospital from Dr. Krans. Although not an admission of liability, this concession amply demonstrates that plaintiff's claim is not the sort of frivolous suit with which section 2—622 is primarily concerned.

Nevertheless, section 2—622 has more than a general purpose; it also contains a number of specific requirements. Among these are that the affidavit be based on a medical report issued by a health professional whom the affiant reasonably believes (i) is knowledgeable in the relevant issues involved in the particular action; (ii) practices or has practiced within the last six years or teaches or has taught within the last six years in the same area of health care or medicine that is at issue in the particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case (Ill. Rev. Stat. 1989, ch. 110, par. 2—622(a)(1)). Also, where the plaintiff intends to rely on the doctrine of *res ipsa loquitur*, the certificate and written report must state that, in the opinion of the reviewing health professional, negligence has occurred in the course of medical treatment, and the affiant shall certify that he is relying on the doctrine of *res ipsa loquitur* (Ill. Rev. Stat. 1989, ch. 110, par. 2—622(c)).

■ On appeal, plaintiff makes no attempt to argue that she complied with these requirements. Rather, she characterizes the requirements as "technical" and cites general authority that trial courts should be liberal in deciding motions to amend complaints. We must agree with defendants, however, that Dr. Muller's report in no way shows that he meets the qualifications of section 2—622(a)(1) and that his conclusions that negligence occurred are simply that—unsupported conclusions that do not define, apply or reflect knowledge of the relevant standard of care. Thus the trial court properly concluded that the shortcomings of the medical report and the affidavit based on that report (other than the inconsequential failure to affirm separately that

plaintiff was relying on *res ipsa loquitur*) were more than "technical."

We also conclude that the trial court properly denied plaintiff leave to amend her complaint to conform to section 2—622. Plaintiff received a 90-day extension and a 30-day extension to comply with section 2—622. After the trial court found that she had not done so, she waited until her motion to reconsider to ask for leave to amend. In requesting leave to amend, she failed to tender any proposed amendments or even to specify a reviewing health professional on whom she might rely for the needed report.

Whether to grant leave to amend is within the sound discretion of the trial court. (*McCastle v. Sheinkop* (1987), 121 Ill. 2d 188, 194; *Moss*, 180 Ill. App. 3d at 638.) Where the plaintiff completely fails to tender proposed amendments that might cure the failure to comply with section 2—622, a reviewing court will not find an abuse of discretion. (*Batten v. Retz* (1989), 182 Ill. App. 3d 425, 430; *Moss*, 180 Ill. App. 3d at 638.) Given the chronology we have set out, we cannot conclude that the trial court abused its discretion in denying plaintiff leave to amend.

Plaintiff's final argument is that, regardless of her failure to comply with section 2—622, the trial court should not have dismissed count II of her complaint. Plaintiff reasons that count II states a claim for common-law negligence rather than medical malpractice and that therefore it should stand even without any proper section 2—622 affidavit or report.

Section 2—622 applies to "any action *** in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice" (Ill. Rev. Stat. 1989, ch. 110, par. 2—622(a)). The term "medical, hospital or other healing art malpractice" must be construed broadly. (*Bernier v. Burris* (1986), 113 Ill. 2d 219, 226-27; *Kus v. Sherman Hospital* (1990), 204 Ill. App. 3d 66, 71.) However, not every patient who suffers an injury in a hospital or medical facility is limited to suing for *malpractice*, as opposed to common-law negligence. (*Kus*, 204 Ill. App. 3d at 71; *Lyon v. Hasbro Industries, Inc.* (1987), 156 Ill. App. 3d 649, 654-55.) Where to draw the line between medical malpractice and common-law negligence is the issue that we face.

In *Lyon*, upon which plaintiff relies, the plaintiff alleged that the defendant ambulance service was negligent in (1) failing to maintain and service its ambulance as a vehicle and (2) failing to equip the ambulance with proper emergency health care equipment. The appellate court held that the first allegation sounded in common-law negligence,

but that the second was one of "healing art malpractice" as that term is used in section 2—622.

The *Lyon* court explained that "healing art" deals with the "entire branch of learning dealing with the restoration of physical or mental health" (*Lyon*, 156 Ill. App. 3d at 654) and that "malpractice" implies the lack of skill in practicing the profession. Under these definitions, the first allegation needed no section 2—622 affidavit because motor vehicle maintenance and service is not a matter of medical skill or judgment. However, the second allegation required documentation pursuant to section 2—622, because "[t]he determination of which equipment is necessary [here] *** is inherently one of medical judgment. The negligence alleged is in an intrinsic part of the provision of the facilities for emergency health care." *Lyon*, 156 Ill. App. 3d at 655.

*Lyon* specifically rejected the argument that a section 2—622 affidavit is necessary only where the plaintiff would need to provide expert testimony at trial to establish negligence. Rather, section 2—622 applies, according to *Lyon*, in any medical malpractice action, even where the negligence alleged is within the knowledge of ordinary jurors. *Lyon*, 156 Ill. App. 3d at 655-56.

Not entirely consistent with *Lyon* is *Kolanowski v. Illinois Valley Community Hospital* (1989), 188 Ill. App. 3d 821. *Kolanowski* held that the plaintiff was required to attach a section 2—622 affidavit and report to his complaint, which alleged that the defendant respite care provider had failed to place sufficient physical restraints on the plaintiff, who was injured when he fell out of a bed on the defendant's premises. Although citing *Lyon*, *Kolanowski* held that whether a complaint sounds in ordinary negligence or in medical malpractice depends upon whether the plaintiff's case may be established without expert medical testimony. (*Kolanowski*, 188 Ill. App. 3d at 823-24.) Because expert medical testimony was required to establish the standard of care in that case, *Kolanowski* affirmed the dismissal of the complaint.

In upholding the constitutionality of section 2—622, the supreme court has adopted the *Lyon* view that a section 2—622 affidavit may not be dispensed with simply because the defendant's alleged negligence may be proved without expert testimony. Paradoxically, the court did so in analogizing the requirements of section 2—622 to the requirement of expert testimony at trial. We quote the court's reasoning:

> "A consideration of the function performed by the health professional under section 2—622 *** demonstrates that his task

in that regard is essentially no different from the function he is later called upon to perform at trial. In medical malpractice cases, the applicable standard of care and its breach must normally be established through expert testimony. [Citations.] Clearly, giving such testimony at trial does not constitute the exercise of a judicial function. *** Section 2—622 merely accelerates the time by which an expert opinion must be obtained. That *section 2—622 requires the submission of a health professional's report even in cases in which expert testimony might not be necessary at trial* (see *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 256-57) merely reflects the legislature's assessment of the statute's desired scope." (Emphasis added.) *DeLuna,* 147 Ill. 2d at 70.

Although the issue of precisely when section 2—622 applies was not squarely before the court in *DeLuna,* the above-cited passage was a vital step in the *DeLuna* rationale, and we believe that we would ignore such a clear pronouncement at our own peril. The language that we have emphasized—along with the citation to *Walski*'s discussion of those situations where expert testimony is not necessary because the common knowledge of lay people is sufficient to establish the standard of care and any deviation therefrom—convinces us that our supreme court has rejected the *Kolanowski* rationale in favor of the *Lyon* rule that section 2—622 applies even in cases of "gross negligence" or "common treatment" (see *Walski,* 72 Ill. 2d at 256-57) as long as these cases involve "medical, hospital or other healing art malpractice." Put differently, there are three types of negligence suits against providers of medical services: (1) malpractice suits requiring expert testimony; (2) malpractice cases not requiring expert testimony; and (3) negligence suits, essentially common-law in character, that happen to be directed against health care providers. According to the language we have quoted from *DeLuna,* only the last of these three does not require a plaintiff to follow section 2—622.

From this discussion we conclude that the type of case in which a plaintiff need not file a section 2—622 affidavit against a defendant health care provider is the exceptional one, defined by the inherent character of the conduct involved rather than whether expert testimony will later be necessary to prove the plaintiff's case. Thus "gross negligence" or the possibility that the standard of care may be established by lay knowledge does not necessarily take a case outside the broad realm of medical, hospital or healing art malpractice. Where determining the standard of care requires applying distinctively medical knowledge or principles, however basic, the plaintiff must comply

with section 2—622. *A fortiori*, where the standard of care involves procedures not within the grasp of the ordinary lay juror, the case is one for malpractice, rather than simple negligence.

■ We therefore hold first that the trial court properly concluded that the Hospital could not be sued for common-law negligence. We may take judicial notice that by their very character hospitals provide unusual if not unique problems regarding the spread of infectious diseases. We agree with defendants that the question of what measures should reasonably be taken to control the spread of diseases within the hospital setting is one necessarily involving medical judgment and that the standard of care is not simply a matter of lay knowledge. At least as to the Hospital, therefore, the trial court properly dismissed count II for failure to comply with section 2—622.

■ Somewhat more difficult to determine is the character of Dr. Krans' potential liability. We have not found a case truly comparable to the one at bar. Plaintiff stresses that she has not alleged that Dr. Krans negligently performed his medical specialty, anesthesiology, or that he fell below the standard of care in the specific treatment of plaintiff's medical condition. Rather, she has alleged that Dr. Krans negligently communicated *his* disease to plaintiff. As Dr. Muller's report implied, this negligent spread of an infectious disease is not unique to doctors or hospitals; the type of injury plaintiff alleges is not peculiarly tied to the practice of medicine. Ordinarily, only licensed medical practitioners perform anesthesiology or other forms of medicine; thus, ordinarily, only medical professionals will be sued for negligently performing those specialties. However, a schoolteacher or prisoner (for example) may in principle be as capable of spreading an infectious disease to others as a doctor. Thus, a case could be made that what is alleged against Dr. Krans is common-law negligence in a medical setting rather than medical malpractice.

While acknowledging the force behind such arguments, we must nonetheless conclude that count II of the complaint, as applied to Dr. Krans, sounds in medical malpractice rather than common-law negligence. Dr. Krans allegedly communicated his disease to plaintiff in the course of his medical practice, *i.e.*, his treatment of plaintiff. Thus, the allegation that he did not adequately prevent the spread of a communicable disease during this operation is effectively an allegation that he showed a want of skill (however gross) in the preparation and performance of his medical duties. Thus, plaintiff alleges that Dr. Krans failed to exercise adequate care in rendering service. Such a failure is one definition of malpractice. *Lyon*, 156 Ill. App. 3d at 653, citing Webster's Ninth New Collegiate Dictionary 721 (1986).

Moreover, the negligence alleged is the spread (or failure to prevent the spread) of a communicable disease, a subject matter that is by nature medical. Although lay people are not wholly unfamiliar with the nature of infectious diseases such as tuberculosis, this subject matter still involves medical learning and judgment beyond that of the average lay person. This is particularly so in the context of a hospital, which, as we have noted, is a setting that presents special difficulties in the control of infectious diseases.

We therefore hold that plaintiff's allegation that Dr. Krans engaged in inadequate preoperative measures is an allegation of medical malpractice rather than one of simple negligence. For the same reasons, any suit against Rockford is also one for medical malpractice.

The trial court properly held that the entire complaint constituted a claim for medical, hospital or healing art malpractice. As plaintiff failed to comply with the requirements of section 2—622, the trial court did not abuse its discretion in dismissing the complaint with prejudice.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

GEIGER and NICKELS, JJ., concur.