# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Zangara v. Advocate Christ Medical Center*, 2011 IL App (1st) 091911

---

| | |
|---|---|
| Appellate Court Caption | JOSEPH ZANGARA, Plaintiff-Appellants, v. ADVOCATE CHRIST MEDICAL CENTER; PAUL GORDON; AJAY PARIKH; and SUNIL SHAH, Defendants-Appellees. WAYNE DZIAMARA, Indiv. and as Special Adm'r of the Estate of Zigmund Dziamara, Deceased, Plaintiff-Appellant, v. ADVOCATE CHRIST MEDICAL CENTER, an Illinois Corporation, a/k/a Advocate Health and Hospitals Corporation, Defendant-Appellee (Manor Care of Palos Heights (West), IL, LLC, a Foreign Corporation, Defendant). |
| District & No. | First District, Sixth Division<br>Docket No. 1–09–1911, 1–09–1914 cons. |
| Filed | June 10, 2011 |
| Rehearing Denied | July 14, 2011 |
| Modified | July 22, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a medical malpractice action arising from the injury to and death of plaintiffs as a result of contracting methicillin-resistant staphylococcus aureas (MRSA) while patients at defendant medical center, the trial court erred in dismissing plaintiffs' claims due to their failure to attach an attorney affidavit and a health care professional's report to the complaints as required by section 2–622 of the Code of Civil Procedure, notwithstanding plaintiffs' contention that their expert was unable to decide whether there was a meritorious cause of action because the trial court ruled that the information needed for the expert's opinion was privileged under the Medical Studies Act and was not discoverable, since |

discovery before filing a section 2–622 affidavit is not limited to plaintiff's personal records, but is subject to the Act and the trial court's discretion, defendant was not entitled to use the Act as a shield against liability by simply claiming the data sought was privileged because it was later reviewed in a committee meeting, plaintiffs did not seek documents or analyses generated specifically for the use of a review committee, and the information was available outside any committee, and therefore, the cause was reversed and remanded.

<table>
<tr><td>Decision Under Review</td><td>Appeal from the Circuit Court of Cook County, Nos. 07–L–14104, 08–L–2086; the Hon Elizabeth M. Budzinski, Judge, presiding.</td></tr>
<tr><td>Judgment</td><td>Reversed and remanded.</td></tr>
<tr><td>Counsel on Appeal</td><td>Michael W. Rathsack, of Chicago (Stephan D. Blandin, Antonio M. Romanucci, and Michael W. Rathsack, of counsel), for appellants.<br><br>Jenny O. Blake and Mehreen S. Sherwani, both of Lowis & Gellen LLP, of Chicago, for appellee Advocate Christ Medical Center.<br><br>Robert Marc Chemers, Alan J. Schumacher, and Scott L. Howie, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellee Ajay Parikh.<br><br>Helaine Wachs Heydemann and Kathy P. Fox, both of Wildman Harrold, of Chicago, for appellee Paul Gordon.</td></tr>
<tr><td>Panel</td><td>JUSTICE CAHILL delivered the judgment of the court, with opinion. Presiding Justice Garcia and Justice McBride concurred in the judgment and opinion.</td></tr>
</table>

**OPINION**

¶ 1       We believe the primary issue in this case is controlled by our supreme court decision in *Roach v. Springfield Clinic*, 157 Ill. 2d 29, 623 N.E.2d 246 (1993). Plaintiffs Joseph Zangara and Zigmund Dziamara appeal the trial court's judgment dismissing their claims for their failure to attach an attorney affidavit and a health care professional's report to their

complaints as required by section 2–622 of the Code of Civil Procedure (Code) (735 ILCS 5/2–622 (West 2008)). Plaintiffs contend that their expert was unable to decide whether there was a meritorious cause of action because the trial court ruled that the information needed for the expert's opinion was privileged under section 8–2101 of the Code, commonly known as the Medical Studies Act (Act) (735 ILCS 5/8–2101 (West 2008)). We reverse and remand.

¶ 2    Joseph Zangara and Zigmund Dziamara contracted methicillin-resistant staphylococcus aureas (MRSA) in 2005 while they were patients at defendant Advocate Christ Medical Center (Advocate). Dziamara died and Zangara survived.

¶ 3    On November 20, 2007, before filing suit, Zangara filed a petition under Illinois Supreme Court Rule 224 (eff. May 30, 2008) for discovery, naming Advocate and asking for: infection-control data and statistics, policies and procedures for the control and treatment of infectious diseases and a list of all patients who contracted MRSA 90 days before Zangara was admitted to Advocate.

¶ 4    On December 18, 2007, Zangara filed a complaint against Advocate and Paul Gordon, M.D., Ajay Parikh, M.D., and Sunil Shah, O.D., alleging negligence. Dziamara's estate brought a similar medical malpractice action against Advocate and Manor Health Services. The complaints essentially allege that Advocate was negligent in its management of infection and infection-control procedures. Zangara's complaint also alleges among other claims that the individual doctors were negligent in failing to recognize he was at risk for developing an MRSA infection.

¶ 5    Neither of plaintiffs' complaints included a section 2–622 report. Instead, plaintiffs' counsel for both cases attached an affidavit to the complaint under section 2–622(a)(3) (735 ILCS 5/2–622 (West 2008)), stating that they were "unable to obtain a consultation with a licensed health care professional required by Paragraph 1 of Section 2–622 *** due to the lack of compliance with requests for records made pursuant to Part 20 of Article VIII of the Illinois Code of Civil Procedure, as well as the need for further discovery in order to determine proper defendants in this cause of action."

¶ 6    On March 18, 2008, Zangara sent a letter to Advocate, requesting production of the documents requested in the original petition for discovery. Advocate did not respond.

¶ 7    On March 26, 2008, the court entered an order entitling Zangara "to all discovery requests regarding any MRSA cases at Advocate Christ pursuant to plaintiff's petition."

¶ 8    On April 9, 2008, Zangara filed a motion to compel Advocate to respond to the petition for discovery.

¶ 9    On April 14, 2008, Advocate and Dr. Parikh filed motions to dismiss Zangara's complaint under section 2–619 of the Code (735 ILCS 5/2–619 (West 2008)) for failing to file a certificate of merit authored by a healthcare professional in accordance with section 2–622 of the Code. Advocate's motion argued that Advocate had responded to Zangara's request for his own medical records by sending them on November 7, 2007, before the lawsuit was filed. Advocate further argued that Zangara's petition for discovery "requested a number of documents and other items that are not properly obtained through such a proceeding" as they "fall outside the scope of" sections 2–622(a)(3) and 8–2001. Following a hearing on the motions to dismiss and Zangara's motion to compel, the court denied the

motions to dismiss and gave Zangara until May 19, 2008, to file his section 2–622 report.

¶ 10      On April 18, 2008, plaintiffs filed separate motions on Advocate, requesting production of documents for six months before plaintiffs' hospitalization concerning: infection-control data, policies, procedures, rules, regulations, guidelines and standards relating to MRSA. Given the commonality of the suits, Zangara's and Dziamara's cases were consolidated and transferred to the same trial judge for discovery purposes.

¶ 11      On May 19, 2008, the court entered orders giving Advocate until June 19, 2008, to produce and answer plaintiffs' request for production. Advocate produced the indices of its policies and procedures manual for the infection-control/epidemiology department in effect during the time period in question. Advocate objected to production of all requests for information about MRSA and submitted a privilege log. Advocate asserted that the Medical Studies Act barred production of committee surgical site infection charts from 2005 through 2006 and all Advocate infection-control meeting minutes "drafted at the request of the Performance Improvement Committee for the purpose of evaluating and improving patient care."

¶ 12      At a hearing plaintiffs' counsel explained that she needed to know the number of MRSA infections so plaintiffs' expert could render an opinion under section 2–622 as to whether Advocate was negligent for failing to notify the public or plaintiffs of an MRSA outbreak or close the hospital. When the court asked why the number of MRSA outbreaks was privileged under the Act, defense counsel responded that "an infectious disease committee investigates any kind of infectious disease outbreaks in the hospital, so their investigation is privileged under the Medical Studies Act. That's why." But, defense counsel admitted that documents generated "in the general course of the hospital's business" were not protected by the Act. The court said that under *Tomczak v. Ingalls Memorial Hospital*, 359 Ill. App. 3d 448, 834 N.E.2d 549 (2005), plaintiffs "are entitled to know all the number of outbreaks" and that Advocate's records could not be considered privileged merely because they were discussed in a peer-review meeting. The court acknowledged that plaintiffs needed to file a section 2–622 report but said that "[plaintiffs'] expert doesn't have enough information." The court found Advocate's privilege log insufficient and ordered Advocate to file an amended privilege log "clearly stating the reasons for claiming privilege under the Medical Studies Act." The court also continued defendants' motion to dismiss.

¶ 13      Advocate submitted 27 pages of documents to the court for *in camera* inspection. Rather than filing an amended privilege log, Advocate filed the affidavit of nurse Karen Martin, manager of infection control at Advocate. Martin said the function of the infection-control committee is to investigate and make recommendations for the prevention and control of infections within the hospital. She said that 4 out of the 27 pages of documents submitted to the court for *in camera* review were created at the request of the committee "to assess and investigate surgical infection rates for the purpose of reducing morbidity and mortality and to improve the quality of patient care at the hospital." Another page was created as part of an "assessment and investigation of infections during the time period between September 2005 to December 2005." Another nine pages appear to be summaries of several committee meetings from August 12, 2005, through January 13, 2006. The remaining pages comprise a PowerPoint presentation with the title "Surgical Site Infection Prevention." Martin said the

documents were generated exclusively for the committee for the purpose of improving patient care. Plaintiffs moved to strike Martin's affidavit and for a finding that the Act did not apply to protect documents listing the cases of MRSA during the requested period.

¶ 14    At a September 19, 2008, hearing the court noted that the allegedly privileged documents Advocate supplied provided no details on MRSA infections. The court told Advocate's counsel to "go through all your hospital records in nine months in infectious disease patients and count how many [cases of MRSA] there were. *** [Y]ou can get that information from a separate source that has nothing to do with the committee." The court's written order reads: "Defendant Advocate to produce documents, information and amended affidavit as required per transcript of hearing."

¶ 15    When Advocate failed to disclose the number of MRSA incidents, plaintiffs asked the court to compel production of the MRSA information requested in plaintiffs' original production request and impose sanctions for Advocate's refusal to produce the MRSA information. Advocate was ordered to amend Martin's affidavit to include the nine-month period for which documents were sought and to specify the date of the committee's formation. Advocate filed Martin's second amended affidavit, and plaintiffs were granted leave to depose Martin.

¶ 16    At Martin's deposition, she was asked if there is "any information regarding MRSA infections between October 5, 2005 and January 13, 2006, available outside the Infectious Control Committee." Martin responded "[y]es." She also said that individual infections are not submitted to the committee. Following Martin's deposition, plaintiffs filed a motion to compel deposition responses from Advocate, arguing that Advocate improperly asserted the privilege under the Act in response to certain deposition questions.

¶ 17    Plaintiffs were granted leave to issue supplemental written discovery on or before March 23, 2009. Advocate was ordered to answer the written discovery on or before April 21, 2009.

¶ 18    Plaintiffs filed discovery requests focusing on documents about MRSA infections within the nine-month period in question and information about MRSA provided to government agencies. In its response Advocate either objected to plaintiffs' requests for production under the Act or referred plaintiffs to Martin's second amended affidavit.

¶ 19    On April 24, 2009, Advocate filed another motion to dismiss plaintiffs' complaints. Drs. Parikh's and Gordon's motions to dismiss were still pending. Advocate argued that plaintiffs' complaints should be dismissed because plaintiffs were seeking medical information for patients other than themselves and they had failed to timely file section 2–622 reports. Advocate was given additional time to file answers or objections to the supplemental discovery. Advocate again objected to plaintiffs' requests for production under the Act or referred plaintiffs to Martin's second amended affidavit.

¶ 20    At a hearing on plaintiffs' motion to compel, the court made a "definitive ruling" that the first 24 pages of documents produced by Advocate "are privileged under the [Act]." Plaintiffs' counsel explained that the MRSA information was "critical to being able to get a 622." The court denied plaintiffs' motion to compel and said it would give plaintiff 30 days to get a section 2–622 report. Advocate's motion to dismiss was continued to that date.

¶ 21    Plaintiffs filed a combined response to defendants' motions to dismiss. Plaintiffs stated

that they consulted with their expert, Dr. John Shershow, and he was unable to determine whether there was a meritorious cause of action in the case. Shershow said that such a determination would be impossible without access to the information requested by plaintiffs. The court granted defendants' motion to dismiss under section 2–619 of the Code (735 ILCS 5/2–619 (West 2008)).

¶ 22    On appeal, we first note that the parties disagree in their briefing on the primary issue in this case. Plaintiffs contend that the trial court's ruling that the MRSA information was privileged under the Act was error. Specifically, plaintiffs argue that "[p]urely statistical information which can be obtained by review of patient files without reference to patient names or care is not protected by or privileged under the Medical Studies Act. Such information, even if used by a committee whose work is protected under that Act, is independent of committee mechanisms and procedures and is therefore subject to discovery."

¶ 23    Defendants frame the main issue as the scope of discovery under section 2–622. They maintain that before a section 2–622 affidavit is filed, discovery must be confined to plaintiffs' personal medical records. In the alternative, defendants contend that plaintiffs' complaints were properly dismissed because the particular information they sought was privileged and not discoverable under the Act.

¶ 24    For the reasons stated below, we believe that discovery before filing a section 2–622 affidavit is not confined to the plaintiffs' personal records but is subject to the Act and the discretion of the trial court. We also believe the trial court erred in finding that the MRSA information was privileged under the Act.

¶ 25    We first address Advocate's contention that discovery before a section 2–622 affidavit is filed must be confined to plaintiffs' personal medical records.

¶ 26    Section 2–622 of the Code was enacted to curtail frivolous medical malpractice lawsuits and to eliminate such actions at the pleading stage before the expenses of litigation mounted. *Iaccino v. Anderson*, 406 Ill. App. 3d 397, 401, 940 N.E.2d 742 (2010) (citing *DeLuna v. St. Elizabeth's Hospital*, 147 Ill. 2d 57, 65, 588 N.E.2d 1139 (1992)). Section 2–622 should not be mechanically applied to deprive a plaintiff of his substantive rights. *Cutler v. Northwest Suburban Community Hospital, Inc.*, 405 Ill. App. 3d 1052, 1064, 939 N.E.2d 1032 (2010) (citing *Schroeder v. Northwest Community Hospital*, 371 Ill. App. 3d 584, 595, 862 N.E.2d 1011 (2006)).

¶ 27    Section 2–622 of the Code requires a plaintiff to file one of three types of affidavits with their complaint. Under section 2–622(a)(1), a plaintiff must attach an affidavit establishing that the affiant has consulted a health professional who has determined, on review of the medical record, that there is a reasonable meritorious cause for filing the action. 735 ILCS 5/2–622(a)(1) (West 2008). Relevant to this case, under section 2–622(a)(3), a plaintiff may instead attach an affidavit stating that counsel has asked for records under section 8–2001 of the Code (735 ILCS 5/8–2001 (West 2008)) but the party responding failed to comply within 60 days. 735 ILCS 5/2–622(a)(3) (West 2008).

¶ 28    Here, plaintiffs' counsel attached an affidavit to the complaint under section 2–622(a)(3) (735 ILCS 5/2–622 (West 2008)), alleging that plaintiffs were "unable to obtain a consultation with a licensed health care professional required by Paragraph 1 of Section

2–622 *** due to the lack of compliance with requests for records made pursuant to Part 20 of Article VIII of the Illinois Code of Civil Procedure, as well as the need for further discovery in order to determine proper defendants in this cause of action."

¶ 29    Defendants argued in the trial court and now on appeal that discovery before a section 2–622 affidavit is filed is restricted to a plaintiff's personal medical records. We disagree and believe the statutory language of sections 2–622 and 8–2001(b) of the Code supports the argument that discovery before a section 2–622 affidavit is filed is not restricted to a plaintiff's personal records.

¶ 30    First, section 8–2001(b), to which section 2–622(a)(3) refers, states:

> "Every private and public health care facility shall, upon the request of any patient who has been treated in such health care facility, *** permit the patient, his or her health care practitioner, authorized attorney, or any person, entity, or organization presenting a valid authorization for the release of records signed by the patient or the patient's legally authorized representative to examine the *health care facility patient care records*, *including but not limited to* the history, bedside notes, charts, pictures and plates, kept in connection with the treatment of such patient, and permit copies of such records to be made by him or her or his or her health care practitioner or authorized attorney." (Emphasis added.) 735 ILCS 5/8–2001 (West 2008).

A plain reading of section 8–2001(b) suggests that the legislature did not intend discovery to be solely confined to a plaintiff's *personal* medical records. See *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59, 857 N.E.2d 229 (2006) (the best source for ascertaining the legislature's intention is the language of the statute itself). A committee note suggests the same: "[section 8–2001] [p]rovides that *records of a health care facility* or a health care practitioner shall be made available for examination or copying to the patient or the patient's legally authorized representative." (Emphasis added.) 95th Ill. Gen. Assem. House Bill 472, 2007 Sess., Fiscal Note, House Committee Amendment No. 1.

¶ 31    Second, defendants rely on the court's statement in *Woodard v. Krans*, 234 Ill. App. 3d 690, 700, 600 N.E.2d 477 (1992), that "[s]ection 2–622, which affects procedure prior to the attachment of a court's jurisdiction [citation], allows only for discovery of the *plaintiff's* medical records." (Emphasis in original.) We believe *Woodard* is distinguishable. In the next sentence, the court said "[p]laintiff has thus shown no basis for her attempt to obtain discovery before all defendants had appeared or were required to appear. 134 Ill. 2d R. 201(d)." *Woodard*, 234 Ill. App. 3d at 700. Supreme Court Rule 201(d) says that "[p]rior to the time all defendants have appeared or are required to appear, no discovery procedure shall be noticed or otherwise initiated without leave of court granted upon good cause shown." Ill. S. Ct. R. 201(d) (eff. July 1, 2002). Here, defendants did appear, and Supreme Court Rule 201(d) does not apply.

¶ 32    Finally, we note that defendants, were they not named in the complaints, could be hailed into court as respondents in discovery without limitation on the scope of discovery. See 735 ILCS 5/2–402 (West 2008) ("[p]ersons or entities so named as respondents in discovery shall be required to respond to discovery by the plaintiff in the same manner as are defendants"); *Brown v. Jaimovich*, 365 Ill. App. 3d 329, 333-34, 847 N.E.2d 870 (2006); *Allen v. Thorek*

*Hospital*, 275 Ill. App. 3d 695, 699-701, 656 N.E.2d 227 (1995).

¶ 33    We believe that discovery before filing a section 2–622 affidavit is not confined to a plaintiff's personal records but is subject to the Act and the discretion of the trial court.

¶ 34    We now turn to the main dispute of the case: whether the trial court erred in finding that Advocate's MRSA infection rates are privileged under the Act.

¶ 35    We review *de novo* whether the Act's privilege applies, but the question of whether specific materials are part of an internal quality control is a factual question that will not be reversed unless it is against the manifest weight of the evidence. *Webb v. Mount Sinai Hospital & Medical Center, Inc.*, 347 Ill. App. 3d 817, 825-26, 807 N.E.2d 1026 (2004).

¶ 36    The Medical Studies Act provides:

> "All information, interviews, reports, statements, memoranda, recommendations, letters of reference or other third party confidential assessments of a health care practitioner's professional competence, or other data of *** committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, or their designees (but not the medical records pertaining to the patient), *used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation*, shall be privileged, strictly confidential and shall be used only for medical research, increasing organ and tissue donation, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges or agreements for services ***." (Emphasis added.) 735 ILCS 5/8–2101 (West 2002).

¶ 37    The purpose of the Act is to ensure members of the medical profession effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care, and to encourage candid, voluntary studies and programs to improve hospital conditions, patient care or reduce the rates of death and disease. *Webb*, 347 Ill. App. 3d at 824-25 (citing *Roach*, 157 Ill. 2d at 40); *Niven v. Siqueira*, 109 Ill. 2d 357, 366, 487 N.E.2d 937 (1985).

¶ 38    The burden of establishing the applicability of an evidentiary privilege rests with the party who seeks to invoke it. *Roach*, 157 Ill. 2d at 41. The Act is not intended to shield hospitals from potential liability, and only documents " 'generated specifically for the use of a peer-review committee receive protection under the Act.' " *Webb*, 347 Ill. App. 3d at 825 (quoting *Chicago Trust Co. v. Cook County Hospital*, 298 Ill. App. 3d 396, 402, 698 N.E.2d 641 (1998)). Documents created in the ordinary course of a hospital's business are not privileged, even if they are later used by a committee in the peer-review process. *Webb*, 347 Ill. App. 3d at 825 (citing *Chicago Trust Co.*, 298 Ill. App. 3d at 406).

¶ 39    Here, the court had initially said that under *Tomczak*, 359 Ill. App. 3d 448, plaintiffs "are entitled to know all the number of outbreaks" and that Advocate's records could not be considered privileged merely because they were discussed in a peer-review meeting. We agree and believe *Tomczak* supports the proposition that in this case, the MRSA rates are not privileged under the Act.

¶ 40    In *Tomczak*, the plaintiffs brought a wrongful death action against Ingalls Memorial

Hospital, alleging that the decedent died as a result of the hospital's delay in treating her. *Tomczak*, 359 Ill. App. 3d at 450. The plaintiffs sought the triage times, treatment times and triage acuity designations of other patients to determine whether the hospital breached its standard of care. The defendants argued that such information was protected by the physician-patient privilege under section 8–802 of the Code (735 ILCS 5/8–802 (West 2004)). The trial court disagreed and ordered production of the information.

¶ 41    On appeal, we agreed with the trial court and held that the "time data" sought by the plaintiffs fell outside the scope of the physician-patient privilege. *Tomczak*, 359 Ill. App. 3d at 454. The physician-patient privilege exists to encourage disclosure between a physician and a patient and to protect the patient from an invasion of privacy. We reasoned that defendants failed to show how the times at which a patient is assessed by a triage nurse or initially treated by a physician is necessary to enable a physician to care for or treat the patient. Other patients' triage and treatment times were "mere incidents of fact unnecessary to enable a physician to perform his or her professional duty and, therefore, fall outside the ambit of the physician-patient privilege." *Tomczak*, 359 Ill. App. 3d at 454.

¶ 42    Defendants correctly recognize that *Tomczak* involved the physician-patient privilege, in contrast to a privilege under the Act. But, we believe the number of MRSA infections is similarly a "mere incident[ ] of fact" and is not privileged under the Act. *Tomczak* also makes clear that we should consider the policy considerations behind the protections afforded to certain types of information in the course of civil discovery. *Tomczak*, 359 Ill. App. 3d at 454-55. In this respect we also find *Tomczak* persuasive and believe that the disclosure of the number of MRSA infections at Advocate between October 5, 2005, and January 13, 2006, does not conflict with the Act's purpose: to ensure members of the medical profession will engage in the effective self-evaluation of their peers in the interest of advancing quality health care. See *Roach*, 157 Ill. 2d at 40.

¶ 43    Advocate is not entitled to use the Act as a shield to protect it from potential liability by simply claiming that the MRSA data is privileged because it was later reviewed in a committee meeting. See *Webb*, 347 Ill. App. 3d at 825-26. As our supreme court explained in *Roach*:

> "If the simple act of furnishing a committee with earlier-acquired information were sufficient to cloak that information with the statutory privilege, a hospital could effectively insulate from disclosure virtually all adverse facts known to its medical staff, with the exception of those matters actually contained in a patient's records. As a result, it would be substantially more difficult for patients to hold hospitals responsible for their wrongdoing through medical malpractice litigation. So protected, those institutions would have scant incentive for advancing the goal of improved patient care. The purpose of the act would be completely subverted." *Roach*, 157 Ill. 2d at 41-42.

¶ 44    Defendants bear the burden of establishing the MRSA data is privileged under the Act and have failed to show it was "generated specifically for the use of a peer-review committee." (Internal quotation marks omitted.) *Webb*, 347 Ill. App. 3d at 825. Plaintiffs seek only the number of MRSA infections between October 5, 2005, and January 13, 2006,

not documents or analyses generated specifically for the use of a review committee to reduce morbidity or mortality or for improving patient care. Compare *Flannery v. Lin*, 176 Ill. App. 3d 652, 654-55, 531 N.E.2d 403 (1988) (affidavits described committee evaluation reports as specifically prepared for the defendant hospital's internal quality control review). In fact, the trial court here initially agreed the MRSA data was not protected and ordered defense counsel to "go through all your hospital records in nine months in infectious disease patients and count how many [cases of MRSA] there were. *** [Y]ou can get that information from a separate source that has nothing to do with the committee." Defense counsel admitted that documents generated "in the general course of the hospital's business" were not protected by the Act, and nurse Martin said at her deposition that information on MRSA infections between October 5, 2005, and January 13, 2006, was available outside of the committee. The number of MRSA infections is a "mere incident[ ] of fact."

¶ 45 On remand, Advocate is ordered to disclose the number of MRSA infections at Advocate for the six-month period before plaintiffs' hospitalizations and the number of MRSA infections at Advocate during the period plaintiffs were hospitalized there. Because the 27 pages of documents submitted to the trial court for *in camera* review do not contain the number of MRSA infections, Advocate need not provide these 27 pages.

¶ 46 Finally, we reject the contention of Drs. Gordon and Parikh that they should be dismissed because their alleged negligence does not necessarily arise out of their failure to consider infection rates, and they were not asked to provide the data. In his affidavit plaintiffs' expert said that without the MRSA data "it is impossible to determine whether Paul Gordon, M.D., Ajay Parikh, M.D., or Sunil Shah, D.O. deviated from any standard of care in their treatment of Plaintiff while a patient at Advocate Medical Center." This brings the doctors into the purview of this discovery dispute.

¶ 47 For the foregoing reasons, we reverse the trial court's determination that the number of MRSA infections at Advocate between October 5, 2005, and January 13, 2006, is protected under the Act. We remand with directions for further proceedings.

¶ 48 Reversed and remanded.