(text box: 1) NO. 5-00-0413

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THOMAS MOYER, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Jackson County.  

)

v. ) No. 99-L-48

)

SOUTHERN ILLINOIS HOSPITAL SERVICE ) 

CORPORATION, d/b/a Memorial Hospital of )

Carbondale, and SANDRA SMITH, R.N., ) Honorable

) David W. Watt, Jr., 

Defendants-Appellees. ) Judge, presiding.  

___________________________________________________________________________

PRESIDING JUSTICE MAAG delivered the opinion of the court:

Thomas Moyer (plaintiff) filed a medical malpractice complaint against Southern Illinois Hospital Service Corp., doing business as Memorial Hospital of Carbondale (Hospital), and Sandra Smith, a registered nurse (collectively, defendants).  Plaintiff filed the complaint on May 25, 1999, alleging that Smith, a Hospital employee, had been negligent in providing care to him.  The Hospital was sued under a 
respondeat superior
 theory for Smith's alleged negligence.  After various motions were filed, the circuit court dismissed plaintiff's amended complaint without prejudice on April 4, 2000, finding that the physician's deposition transcript that was attached to plaintiff's complaint did not satisfy section 2-622(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-622(a) (West 1996)), which requires a plaintiff to file a "written report."  Plaintiff then filed a first amended complaint.  Defendants filed a motion to strike and dismiss plaintiff's first amended complaint.  On May 23, 2000, the circuit court entered an order denying defendants' motion to strike.  The court granted defendants' motion to dismiss plaintiff's first amended complaint with prejudice.  Plaintiff filed a motion to reconsider on June 19, 2000, and it was denied.  Plaintiff filed a timely notice of appeal.

The relevant facts are as follows.  Plaintiff filed a medical malpractice complaint against defendants on May 25, 1999.  The complaint stated that on May 28, 1997, plaintiff was taken to the emergency room at the Hospital.  Plaintiff had symptoms that caused the emergency room physician, Dr. Stuart Hickerson, to suspect that plaintiff was suffering from a myocardial infarction.  Dr. Hickerson ordered certain diagnostic tests and the administration of, among other things, thrombolytic therapy.  Plaintiff claimed that the Hospital and Smith had a duty to provide proper care and that they breached that duty by failing to appropriately deliver thrombolytic therapy.

Pursuant to section 2-622(a)(2) of the Code (735 ILCS 5/2-622(a)(2) (West 1996)), plaintiff's attorney attached an affidavit to the complaint.  The affidavit stated, "[Plaintiff's attorney was] unable to obtain a consultation required by statute because the statute of limitations would impair the action and a consultation required [
sic
] could not be obtained before the expiration of the statute of limitations."  According to section 2-622(a)(2), "[i]f an affidavit is executed pursuant to this paragraph, the certificate and written report required by paragraph 1 shall be filed within 90 days after the filing of the complaint."  735 ILCS 5/2-622(a)(2) (West 1996).  Hence, plaintiff's affidavit and written report were required to be filed by August 23, 1999.

Plaintiff's counsel sent a notice of discovery deposition on September 13, 1999, requesting "[a]ll medical records pertaining to any care and treatment of [plaintiff]."  On September 17, 1999, defendants filed a motion for involuntary dismissal stating that plaintiff failed to comply with the requirements of section 2-622(a)(2) in that he failed to file within 90 days the certificate and written report as required by that section.

Dr. Frank Bleyer's deposition took place on September 22, 1999.  Dr. Bleyer testified that he is a board-certified cardiologist.  Dr. Bleyer opined that Smith had deviated from the standard of care that was necessary for a nurse in her position.

Plaintiff filed a motion for leave to amend plaintiff's complaint and a response to defendants' motion to dismiss on October 4, 1999.  The proposed amended complaint contained portions of the transcript of Dr. Bleyer's deposition.  Within said motion, plaintiff alleged that section 2-622(a)(3) (735 ILCS 5/2-622(a)(3) (West 1996)) does not require that the affidavit and report be filed until the plaintiff has received the relevant medical records.  Plaintiff alleged that he had requested all of the medical records pertaining to the emergency room care provided by defendants.  Plaintiff claimed that when defendants provided plaintiff's medical records, they failed to provide pertinent information relating to the infusion process.  More specifically, plaintiff claimed that the infusion process did not work properly and that, for an unknown period of time, he was not properly infused.  The medical records provided by defendants failed to indicate any problem with the infusion of the thrombolytic.  Plaintiff claimed that the entire incident was contained in an "incident report" which was not released to him.  Plaintiff stated that he had requested that the incident report be provided to him.  Although plaintiff did not initially receive the thrombolytic administration record from the Hospital's records department, the hospital sent it to plaintiff on August 26, 1999.  Plaintiff contended that the thrombolytic administration record does not describe what occurred, either.

The circuit court denied defendants' motion to dismiss and granted plaintiff leave to file an amended complaint.  Plaintiff filed the amended complaint claiming that Smith had been negligent, and he sued the hospital under the 
respondeat superior
 theory.  Attached to the complaint was an affidavit from plaintiff's attorney and selected pages from the transcript of plaintiff's treating physician's deposition.

On November 12, 1999, defendants filed a motion to dismiss the amended complaint.  Defendants asserted that plaintiff's amended complaint should be dismissed because the attorney's affidavit and physician's deposition transcript did not satisfy the requirements of section 2-622(a)(1) of the Code (735 ILCS 5/2-622(a)(1) (West 1996)).  Defendants contended that the physician was not qualified to render an opinion regarding the nurse's actions.  Additionally, defendants claimed that neither the affidavit nor the deposition transcript set forth the qualifications of the physician to render opinions and that the physician failed to state in his deposition that a meritorious cause of action existed to bring an action against Smith or the Hospital.

After hearing oral argument on defendants' motion to dismiss, the circuit court dismissed plaintiff's amended complaint without prejudice on April 4, 2000, finding as follows:  "The attachment of a portion of a physician's deposition [transcript] to plaintiff's complaint does not satisfy [section 2-622 (735 ILCS 5/2-622 (West 1996))][,] which requires plaintiff to attach an appropriate 'written medical [
sic
] report.' "

On April 14, 2000, plaintiff filed a first amended complaint.  This complaint contained the same allegations of negligence as those stated in the original amended complaint.  Plaintiff also attached an attorney's affidavit and a written report from Dr. Ralph Kelley.  Dr. Kelley stated that he had reviewed the records from the Hospital and the transcripts of the discovery depositions of Dr. Bleyer, Dr. Hickerson, and Smith.  Dr. Kelley opined that the thrombolytic therapy was not provided to plaintiff in compliance with protocol and that the failure to do so constituted a deviation from the standard of care by Smith and the Hospital.  

Defendants filed a motion to strike and dismiss plaintiff's first amended complaint on April 24, 2000.  Defendants requested that the circuit court strike plaintiff's first amended complaint because plaintiff failed to ask for leave of court to file it.  Additionally, defendants requested that the circuit court dismiss plaintiff's first amended complaint because the attorney's affidavit and written report did not satisfy the requirements of section 2-622(a)(1) of the Code.  Defendants again complained that neither the attorney's affidavit nor the physician's medical report showed that the physician was qualified to render opinions regarding Smith's actions.

On May 23, 2000, the circuit court entered an order denying defendants' motion to strike.  The court granted defendants' motion to dismiss plaintiff's first amended complaint with prejudice.  The court held, "The medical report and attorney affidavit filed pursuant to section 2-622 is insufficient in that the medical report fails to set forth the qualifications of the affiant as required and enumerated within section 2-622."  The court also stated that pursuant to section 2-622(a)(1) and two Illinois Supreme Court cases (
Dolan v. Galluzzo
, 77 Ill. 2d 279, 396 N.E.2d 13 (1979); 
Jones v. Young
, 154 Ill. 2d 39, 607 N.E.2d 224 (1992)), the physician who prepared the medical report was not qualified to testify, provide opinions, or prepare a medical report regarding whether a meritorious cause of action existed against a nurse for any alleged negligence in performing nursing procedures.  The court also stated, "[Plaintiff] has had sufficient time within which to file an appropriate attorney affidavit and medical report under [section 2-622 of the Code] and has failed to do so."  Plaintiff filed a motion to reconsider on June 19, 2000.  The circuit court entered an order on June 20, 2000, denying plaintiff's motion to reconsider.  Plaintiff filed a timely notice of appeal.

The determination as to whether a complaint should be dismissed with or without prejudice for the plaintiff's failure to satisfy the requirements of section 2-622(a) is in the sound discretion of the circuit court.  
Peterson v. Hinsdale Hospital
, 233 Ill. App. 3d 327, 330, 599 N.E.2d 84, 87 (1992).  The circuit court's decision will not be disturbed unless it is clear that it has abused its discretion.  
Jacobs v. Rush North Shore Medical Center
, 284 Ill. App. 3d 995, 997, 673 N.E.2d 364, 366 (1996).  However, we note that if the circuit court's determination of whether the plaintiff has complied with section 2-622(a) involves the interpretation of statutory language, that interpretation is subject to 
de novo
 review.  
Bruso v. Alexian Brothers Hospital
, 178 Ill. 2d 445, 452, 687 N.E.2d 1014, 1016 (1997).

Initially, we note that defendants claim that if this court finds that plaintiff's first amended complaint was properly filed, then this court must find that plaintiff effectively abandoned and withdrew the amended complaint.  See 
Barnett v. Zion Park District
, 171 Ill. 2d 378, 384, 665 N.E.2d 808, 811 (1996) (if a plaintiff pleads over rather than stands by the dismissed complaint, the plaintiff has no right to assign error thereto).

In order to file an amended complaint, the plaintiff must seek and obtain the court's permission.  
In re Estate of Zander
, 242 Ill. App. 3d 774, 776, 611 N.E.2d 86, 88 (1993).  "Amendments filed without leave of court are said to be a nullity which should be stricken."  
Zander
, 242 Ill. App. 3d at 776, 611 N.E.2d at 88.

In the instant case, plaintiff's first amended complaint was filed on April 24, 2000, without leave of court.  Accordingly, it was a nullity.  Hence, we will not address any of plaintiff's arguments with respect to the dismissal of the first amended complaint.

Plaintiff claims that the circuit court erred in dismissing plaintiff's amended complaint due to plaintiff's failure to file a "written report" pursuant to section 2-622(a) of the Code. 

Whether plaintiff has complied with section 2-622(a) in filing a deposition transcript as a "written report" involves the interpretation of statutory language; hence, that interpretation is subject to 
de novo
 review.  See 
Bruso
, 178 Ill. 2d at 452, 687 N.E.2d at 1016.

 Section 2-622(a)(1) provides in relevant part as follows:

"(a)  In any action, whether in tort, contract[,] or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit, attached to the original and all copies of the complaint, declaring one of the following:

1.  That the affiant has consulted and reviewed the facts of the case with a health professional who the affiant reasonably believes: (i) is knowledgeable in the relevant issues involved in the particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in the particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case; that the reviewing health professional has determined in a 
written report
, after a review of the medical record and other relevant material involved in the particular action[,] that there is a reasonable and meritorious cause for the filing of such action ***.  ***  A copy of the 
written report
, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists, must be attached to the affidavit."  (Emphasis added.)  735 ILCS 5/2-622(a)(1) (West 1996).

We note parenthetically that although plaintiff filed his affidavit pursuant to section 2-622(a)(2) of the Code, that section refers to the "written report" required by section 2-622(a)(1).  735 ILCS 5/2-622(a)(1), (a)(2) (West 1996).

When construing a statute, the court strives to ascertain and give effect to the intent and meaning of the legislature, and that effort properly begins with an examination of the statutory language.  
Texaco-Cities Service Pipeline Co. v. McGraw
, 182 Ill. 2d 262, 270, 695 N.E.2d 481, 485 (1998).  In the absence of a statutory definition, "the courts will assume that statutory words have their ordinary and popularly understood meanings."  
People v. Blair
,  52 Ill. 2d 371, 373, 288 N.E.2d 443, 445 (1972).

In the case at hand, plaintiff filed the original complaint on May 25, 1999.  Pursuant to section 2-622(a)(2) of the Code, plaintiff attached an affidavit to his complaint.  The affidavit asserted that the statute of limitations would impair the action and that the required consultation could not be obtained before the running of the statute of limitations.  We note parenthetically that section 2-622(a)(2) refers to the "written report" required by section 2-622(a)(1).  Plaintiff then sought leave of court to file an amended complaint with an attached affidavit and selected pages from the transcript of plaintiff's treating physician's deposition.  The court granted plaintiff leave to file the amended complaint.  The court then dismissed plaintiff's amended complaint, finding that the portion of the physician's deposition transcript that was attached to the amended complaint did not comply with section 2-622(a), which requires the plaintiff to file a "written report."

We note, however, that in 
Apa v. Rotman
, 288 Ill. App. 3d 585, 589, 680 N.E.2d 801, 804 (1997), this court stated that the purpose of section 2-622 is to reduce the number of frivolous medical malpractice lawsuits that are filed and to eliminate such actions at an early stage.  "The purpose of the enactment is not to burden the plaintiff with insurmountable hurdles prior to filing [citation][] but to ensure that plaintiff has a meritorious claim."  
Apa
, 288 Ill. App. 3d at 589, 680 N.E.2d at 804.  The absence of strict compliance is one of form only and not one of substance, and the technical requirements of the statute should not interfere with the spirit or purpose of the statute.  
Apa
, 288 Ill. App. 3d at 589, 680 N.E.2d at 804.  Additionally, adherence to the technical requirements of the statute should not be mechanically required to deprive a plaintiff of his substantive rights.  Hence, section 2-622 must be liberally construed in order for cases to be quickly and finally decided according to the substantive rights of the parties.  
Apa
, 288 Ill. App. 3d at 589, 680 N.E.2d at 804.

Our review of the record shows that Dr. Bleyer's deposition was taken and that no one objected to the taking of that deposition.  There is no question that after a deposition has been transcribed, the deposition transcript is a written document.  Since the issue is really the 
content
 of the written document and not whether it is in the form of a letter or a deposition transcript, we find that a deposition transcript may be a "written report" within the meaning of section 2-622(a) of the Code if the deponent doctor, in sufficient detail, sets forth facts and conclusions that satisfy the requirements of the statutorily required report.  The form of the report–
i.e.
, letter, dictated report that is transcribed, or transcribed deposition–matters little.  What does matter is that the "author" of the report must be shown to have the requisite qualifications to express an opinion, and the report must demonstrate a reasonable and meritorious claim.  If a deposition transcript shows that the plaintiff has a meritorious claim, the technical requirements of the statute should not interfere with the spirit or purpose of the statute.  Justice Learned Hand once observed, "[I]t is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary[] but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."  
Cabell v. Markham
, 148 F.2d 737, 739 (2nd Cir. 1945), 
aff'd
, 326 U.S. 404, 90 L. Ed. 165, 66 S. Ct. 193 (1945).  

Defendants argue that even if this court determines that the selected pages of the physician's deposition transcript are a "written report" pursuant to section 2-622(a) of the Code,  plaintiff's amended complaint was properly dismissed because the physician was "not qualified" to prepare the written report pursuant to section 2-622(a)(1).  We disagree.

The determination as to whether a complaint should be dismissed with or without prejudice for a plaintiff's failure to satisfy the requirements of section 2-622(a) is in the sound discretion of the circuit court.  
Hinsdale Hospital
, 233 Ill. App. 3d at 330, 599 N.E.2d at 87. 

Section 2-622 sets forth several provisions regarding the qualifications that a health professional must possess in order to complete the report.  This section provides that the attorney must attest that he has consulted and reviewed the facts of the case with a health care professional who "(i) is knowledgeable in the relevant issues involved in the particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in the particular action; and (iii) is qualified by experience or demonstrated competence in the subject of the case."  735 ILCS 5/2-622(a)(1) (West 1996).

Defendants then cite three cases (
Cuthbertson v. Axelrod
, 282 Ill. App. 3d 1027, 669 N.E.2d 601 (1996); 
Tucker v. St. James Hospital
, 279 Ill. App. 3d 696, 665 N.E.2d 392 (1996); 
Woodard v. Krans
, 234 Ill. App. 3d 690, 600 N.E.2d 477 (1992)) to support their argument that, in order for the complaint to have a proper certificate of merit, the physician's written report must also state that these qualifications are met.  In their brief, defendants state, "Without a statement in the written report from the reviewing health professional that he meets the qualifications of section 2-622(a)(1), there is no basis for the attorney to state, in his affidavit, that the health professional has such qualifications."  Defendants then make the curious statement, "Because Dr. Bleyer is not a nurse and he does not establish that he is otherwise qualified to testify about nursing procedures, he was not qualified to testify regarding the nurse's standard of care in administering or monitoring thrombolytic therapy."  Defendants request that this court "require the plaintiff to obtain a written report from either a licensed nurse or a physician who either practices or has practiced or teaches or has taught nursing or nursing procedures within the last six years, i.e., someone who has knowledge regarding the appropriate nursing (not physician) standard of care."  Defendants claim that to hold otherwise "would impose a higher standard of care on a nurse."

A review of Dr. Bleyer's deposition transcript shows that he meets the qualifications that are required by section 2-622(a)(1) of the Code to enable him to render an opinion regarding Smith's actions.  A review of Dr. Bleyer's deposition transcript shows that he is a board-certified cardiologist.  Dr. Bleyer stated that he was working in the emergency room on May 28, 1997.  He stated that he provided care to plaintiff on that date and that he began thrombolytic therapy.  Dr. Bleyer stated that plaintiff was having an "acute anterior wall myocardial infarction, a heart attack."  He explained, "It's been shown in numerous studies that the administration of thrombolytics in this type of myocardial infarction improves survival, decreases left ventricular dysfunction, and is the standard of care for this kind of treatment when the patient presents in the appropriate time frame that would allow the administration of the drug."  Dr. Bleyer stated that the appropriate time frame is "definitely in the first six hours."  He explained that a mortality benefit has clearly been shown with the administration of thrombolytics in the first six hours.  He further stated:  "From six to twelve hours, there are some studies that do indicate that the administration of thrombolytics would improve survival, but that is not as clear as in the first six hours.  And *** there *** [are] studies that [indicate that the administration of thrombolytics] from 12 to 24 hours [improves survival,] especially if the patient has had a stuttering course where maybe he has had some chest pain and it's gone."  The deposition testimony emphasized that time is of the essence and that it is recommended that thrombolytics are given as soon as possible to increase the chance of survival and decrease damage.  On redirect, Dr. Bleyer explained that the cause of heart attack is mild, moderate, or severe atherosclerosis, usually in the arteries.  The atherosclerosis or plaque will rupture or become unstable and will open its inner contents into the bloodstream.  This activates the clotting mechanism, and a clot or thrombus will develop.  The thrombus is made of clotting factors, platelets, and it occludes the artery, sometimes totally, sometimes partially.  Dr. Bleyer stated that, usually, if there is total occlusion, there is an infarction.  With partial occlusion, an unstable angina or non-Q-wave infarction results.  Dr. Bleyer explained that, in general, a total occlusion leads to a Q-wave myocardial infarction.  He stated that the thrombolytic therapy will stimulate the breakdown of the clot, which opens the blood vessels so the blood can return to the area of the heart that is normally supplied by the blood vessel.  He emphasized that time is of the essence in the administration of the thrombolytic therapy.  Dr. Bleyer opined that plaintiff had a myocardial infarction and that he sustained anterior wall damage as a result.  When he was asked his opinion, within a reasonable degree of medical certainty, whether the chance of injury to plaintiff increased due to Smith's delay in administering the thrombolytic therapy, he states as follows:  "[I]t is clear that time is important for adequate thrombolysis.  Whether the delay of 15 to 18 minutes was the sole, the only, or the contributing factor to the residual damage that is left with the patient I cannot tell you."  Dr. Bleyer did state, however, that the chance of damage is increased with any type of delay of thrombolytics.  Dr. Bleyer claimed that he is a "very particular physician" and that he "let it be known" that he was very unhappy with Smith's delay of thrombolytics in plaintiff's case.  He agreed that it was Smith's job to infuse plaintiff.  He also agreed that Smith was supposed to be monitoring plaintiff to ensure that he was, in fact, being infused.  Dr. Bleyer admitted that he was aware that plaintiff had not been infused for an indeterminate period of time and that Smith had deviated from the standard of care on the part of a nurse.  Although Dr. Bleyer admitted that a nurse should not be watching the pump "every minute," he stated that if she had looked at the pump, she would have known that plaintiff was not being infused.

Defendants cite 
Jones
, 154 Ill. 2d 39, 607 N.E.2d 224, 
Dolan
, 77 Ill. 2d 279, 396 N.E.2d 13, and 
Wingo v. Rockford Memorial Hospital
, 292 Ill. App. 3d 896, 686 N.E.2d 722 (1997), to support their position that Dr. Bleyer was not in the same area of health care or medicine as Smith.  These cases are distinguishable from the instant case because they relate to whether a professional is qualified to testify and provide opinions 
at trial
, whereas in the instant case we are being asked to determine whether a cardiologist is qualified  pursuant to section 2-622(a) of the Code to make a written report regarding the actions of a nurse administering thrombolytic therapy, a cardiac infusion process that is used to reduce the risk of residual damage during a heart attack.  The qualifications required to testify at a trial are different than those required by section 2-622(a).  The type of testimony that will be relied on at a trial has no bearing on the requirements of section 2-622.  See 
Lyon v. Hasbro Industries, Inc.
, 156 Ill. App. 3d 649, 655, 509 N.E.2d 702, 707 (1987) (the plaintiff must comply with section 2-622 even if the plaintiff can prove his or her case at a trial without an expert).

Dolan
 is also distinguishable from the instant case because it dealt with a podiatrist.  Podiatrists are specifically mentioned in section 2-622(a), and specific exceptions apply in cases involving podiatrists.  

The issue in the case at hand was addressed in 
Shanks v. Memorial Hospital
, 170 Ill. App. 3d 736, 525 N.E.2d 177 (1988).  In 
Shanks
, the plaintiff filed a medical malpractice action against a hospital's nursing staff.  At issue in 
Shanks
 was whether the plaintiff's consultation with a registered nurse fulfilled the requirements of section 2-622(a)(1).  The 
Shanks
 court pointed out, "If the defendant is 'a physician licensed to treat human ailments without the use of drugs or medicines and without operative surgery, a dentist, a podiatrist, or a psychologist,' the health care professional must be one licensed in the same profession as the defendant."  
Shanks
, 170 Ill. App. 3d at 739, 525 N.E.2d at 179 (quoting Ill. Rev. Stat. 1985, ch. 110, par. 2-622(a)(1)).  The 
Shanks
 court stated, "For all other defendants, however, the health care professional must be a 'physician licensed to practice medicine in all its branches.' "  
Shanks
, 170 Ill. App. 3d at 739, 525 N.E.2d at 179-80 (quoting Ill. Rev. Stat. 1985, ch. 110, par. 2-622(a)(1)).  The 
Shanks
 court determined that since the defendant (the hospital) fell into the category of "all other defendants," the plaintiff was required to consult a physician licensed to practice medicine in all its branches.  The 
Shanks
 court then stated that the plaintiff's consultation with a registered nurse did not comply with the requirements of section 2-622(a)(1).  
Shanks
, 170 Ill. App. 3d at 739, 525 N.E.2d at 180.

The 
Shanks
 decision states that section 2-622(a)(1) of the Code defines the type of health care professional to be consulted, based on the type of defendant sued.  Hospitals and nurses fall under the second category of "all other defendants."  That portion of the statute states that for all other defendants, the health care professional must be a physician licensed to practice medicine in all its branches.  Hence, if a plaintiff is suing a hospital or a nurse, he must still attach a report from a physician, according to the statute.  In 
Lyon
, 156 Ill. App. 3d at 655, 509 N.E.2d at 707, the court held that a plaintiff must comply with section 2-622 even if the plaintiff could prove his case at a trial without an expert.

We agree with the 
Shanks
 court and conclude that defendants' argument is one that would be more appropriately addressed to the legislature.  The legislature has determined which health care professionals can submit the required report under the statute, and we will not substitute our judgment for that of the legislature when the statute is clear.  See 
Shanks
, 170 Ill. App. 3d at 740, 525 N.E.2d at 180.

Hence, after reviewing the aforementioned deposition transcripts, we conclude that Dr. Bleyer is knowledgeable in the relevant issues involved in the particular action.  Additionally, his deposition established that he is a board-certified cardiologist and that he was practicing in that capacity when plaintiff presented himself at the Hospital.  Hence, at the time of the alleged malpractice, Dr. Bleyer was practicing within the same area of health care or medicine (cardiology) that is at issue in this particular action.  Finally, the deposition testimony shows that Dr. Bleyer is qualified by experience or demonstrated competence in cardiology.  We find that Dr. Bleyer's deposition establishes that he was qualified pursuant to section 2-622(a) to complete the written report required by that section.

The attorney's affidavit that was attached to plaintiff's original amended complaint stated as follows:

"1.  That I have reviewed the facts of the aforementioned case with Dr. Bleyer, one of the treating physicians in this cause of action, by taking his deposition, where a portion of the medical records pertaining to [plaintiff] were carefully reviewed as they pertained to the treatment provided by [the Hospital] and Sandra Smith, R.N.[;]

2.  Based on his knowledge of the treatment, Dr. Bleyer, who is knowledgeable in the relevant issues involved in this action and who has practiced and is practicing in the same area of medicine and is qualified to offer opinions in this area[,] concluded, as stated in his deposition, which constitutes a written report, the relevant excerpts of which are attached hereto, that [plaintiff] was provided negligent care at [the Hospital] by Sandra Smith, R.N.;

3.  That said nurse did not properly monitor the patient after the infusion of thrombolytic agents had been ordered;

4.  That those conclusions reached by Dr. Bleyer indicate a reasonable cause for filing a meritorious cause of action against those defendants."

After reviewing Dr. Bleyer's deposition testimony, we find that the attorney's affidavit, which was based on the deposition, establishes that Dr. Bleyer was qualified to complete the required written report.

Defendants argue the following: "Even assuming this court would hold, in a case of first impression[,] that a medical deposition can be considered to be a written report under section 2-622[] and assuming a doctor can testify to a nursing standard of care, the trial court's decision should be affirmed because there was no evidence that the defendant [
sic
] breached any standard of care."  We disagree.

Dr. Bleyer's testimony established that Smith had deviated from the standard of care for a nurse because she did not monitor plaintiff properly while he was being infused.  

Defendants claim that there was no showing that there was a reasonable and meritorious cause for the filing of the action pursuant to section 2-622(a).  We agree with defendants that section 2-622 provides that an attorney's affidavit, which is required to be filed, must contain statements regarding the health professional's qualifications to render opinions in the case.  Section 2-622 also requires that the attorney's affidavit must state that "the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action[,] that there is a reasonable and meritorious cause for the filing of such action."  735 ILCS 5/2-622(a)(1) (West 1996).  That section also states, "A copy of the written report, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists, must be attached to the affidavit."  735 ILCS 5/2-622(a)(1) (West 1996).  

In the instant case, the attorney's affidavit states, "[The] conclusions reached by Dr. Bleyer indicate a reasonable cause for filing a meritorious cause of action against those defendants."  When Dr. Bleyer was asked in his deposition his opinion, within a reasonable degree of medical certainty, whether the chance of injury to plaintiff increased due to Smith's delay in administering the thrombolytic therapy, he stated as follows: "[I]t is clear that time is important for adequate thrombolysis.  Whether the delay of 15 to 18 minutes was the sole, the 
only
, 
or the contributing factor to the residual damage
 that is left with the patient I cannot tell you."  (Emphasis added.)  Dr. Bleyer did state, however, that the chance of damage is increased with any type of delay of thrombolytics.  Dr. Bleyer claimed that he is a "very particular physician" and that he "let it be known" that he was very unhappy with Smith's delay of thrombolytics in plaintiff's case.  Dr. Bleyer agreed that it was Smith's job to infuse plaintiff.  He also agreed that Smith was supposed to be monitoring plaintiff to ensure that he was, in fact, being infused.  Dr. Bleyer admitted that he was aware that plaintiff had not been infused for an indeterminate period of time and that 
Smith had deviated from the standard of care on the part of a nurse
.  Although Dr. Bleyer admitted that a nurse should not be watching the pump "every minute," he stated that if she had looked at the pump, she would have known that plaintiff was not being infused.  Dr. Bleyer also admitted that during the time period that thrombolytic therapy was delayed, plaintiff was having chest pains.  Dr. Bleyer stated that since plaintiff was having chest pain during this period of time, he assumed "that there was still anoxia to the myocardium."

Hence, a review of Dr. Bleyer's testimony shows that he emphasized that any type of delay in administering thrombolytic therapy increases the chance for damage and that Smith had clearly deviated from the standard of care on the part of a nurse.  Dr. Bleyer also stated that he could not opine whether the delay was either the sole cause of or merely a contributing factor in a patient's residual damage.  Dr. Bleyer's testimony established that while it is difficult to know precisely how much damage any patient would sustain with a delay of thrombolytics, delay is not desirable because it increases the chance of damage to the patient.  Hence, Dr. Bleyer's testimony shows that plaintiff has a meritorious cause of action.  See 
Hagood v. O'Conner
, 165 Ill. App. 3d 367, 373, 519 N.E.2d 66, 70 (1988) (a health professional is not required to include the phrase "reasonable and meritorious cause for filing the action" within the written report, although there must be sufficient facts and conclusions set forth in the report to support the finding).

Defendants claim that Dr. Bleyer had to state his opinion, to a medical degree of certainty, that Smith had deviated from the nursing standard of care in failing to monitor the infusion.  Defendants cite 
Collins v. Straka
, 164 Ill. App. 3d 355, 517 N.E.2d 1147 (1987), to support their argument that medical opinions must be based upon a reasonable degree of medical certainty to be received or relied on by a jury.

Initially, we note that the deposition testimony in the instant case was being used as a "written report" pursuant to section 2-622 of the Code.  Dr. Bleyer's testimony was not being received or relied on by a jury.  Additionally, Illinois courts liberally construe a physician's certificate of merit in favor of the malpractice plaintiff, recognizing the statute as a tool to reduce frivolous lawsuits by requiring a minimum amount of merit, 
not a likelihood of success
.  
Sherrod v. Lingle
, 223 F.3d 605, 613 (7th Cir. 2000).

Based on the foregoing analysis, we conclude that the circuit court abused its discretion in determining that plaintiff failed to satisfy the requirements of section 2-622 of the Code. 

For all of these reasons, we reverse the circuit court's April 4, 2000, order dismissing plaintiff's amended complaint because Dr. Bleyer's deposition transcript was not a "written report" pursuant to section 2-622 of the Code.  We remand this case to the circuit court for further proceedings consistent with this opinion.

Reversed; cause remanded.

WELCH and RARICK, JJ., concur.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 02/07/02.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.