2024 IL App (1st) 230553-U

FOURTH DIVISION
Order filed: February 8, 2024

No. 1-23-0553

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | |
|---|---|
| GEORGIY CHERKASSKY, as Independent Administrator of the Estate of LENA CHERKASSKAYA, Deceased, | ) Appeal from the<br>) Circuit Court of<br>) Cook County. |
| Plaintiff-Appellant, | ) |
| v. | ) |
| SVETLANA TSIPURSKY M.D., ADVANCED EYE CARE, LTD, an Illinois Corporation, MELINDA FAIER, M.D., FOX VALLEY ANESTHESIA ASSOCIATES, S.C., a Dissolved Illinois Corporation, and NORTHWEST SURGICARE, LLC, a Foreign Limited Liability Company, | ) No. 2019 L 003852 |
| Defendants | ) |
| (Melinda Faier, M.D., Fox Valley Anesthesia Associates, S.C., and Northwest Surgicare, LLC, Defendants-Appellees). | ) Honorable<br>) Scott D. McKenna,<br>) Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Martin and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:    In a medical malpractice action, the deposition testimony of three physicians was insufficient to qualify as a health professional report under section 2-622 of the Code of Civil Procedure when the testimony did not contain a determination that the defendant physician at issue had departed from the standard of care; dismissal with prejudice was warranted when the plaintiff deliberately chose not to file a section 2-622 report and had ample time to obtain one; the plaintiff's claim that an anesthesiologist acted negligently in not allowing her to undergo surgery under general anesthesia was medical in nature and could not proceed as an ordinary negligence claim; and the plaintiff failed to plead the existence of an apparent agency relationship between her ophthalmologist and the hospital where her surgery occurred when the plaintiff admitted that her healthcare power of attorney relied on the ophthalmologist, and not the hospital, to provide her medical care.

¶ 2    In this interlocutory appeal filed pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), Georgiy Cherkassky ("Georgiy"), as independent administrator of the Estate of Lena Cherkasskaya ("the Estate"), appeals the dismissal of five claims that Lena Cherkasskaya ("Lena"), and then the Estate after her passing, brought against Melinda Faier, M.D., Fox Valley Anesthesia Associates, S.C. ("FVAA"), and Northwest Surgicare, LLC ("Surgicare"). The circuit court dismissed those counts based on the Estate's failure to comply with section 2-622 of the of Code of Civil Procedure ("Code") (735 ILCS 5/2-622 (West 2020)) for its claims involving Dr. Faier and for the Estate's failure to plead facts that could establish that Surgicare had an agency relationship with either Dr. Faier or the other defendant physician, Svetlana Tsipursky, M.D. We see no merit to the Estate's arguments on appeal and affirm the circuit court's rulings.

¶ 3    On April 10, 2019, Georgiy, acting as Lena's power of attorney for property, filed his initial complaint raising two claims of medical malpractice against defendants Dr. Tsipursky and Advanced Eye Care, Ltd. According to the allegations in the complaint, Lena, who was ninety-two years old at the time and incapacitated by dementia, was injured by the medical negligence of the defendants during an eye cataract surgery performed on April 11, 2017. During the surgery, part of the nucleus descended into the vitreous, and the surgery was aborted. Georgiy alleged in

the complaint that Lena required an emergent vitrectomy under general anesthesia to remove the nucleus fragments but that her anesthesiologist, Dr. Faier, would not authorize general anesthesia without clearance from Lena's primary care physician and without cardiac testing because Lena's lungs had become congested. Lena's primary care physician would not authorize the procedure without an evaluation by a cardiologist.

¶ 4 On April 13, 2017, a retinal specialist, Dr. Enrique Garcia-Valenzuela, performed a vitrectomy on Lena's right eye without placing her under general anesthesia. Because Lena was not sedated and was not able to hold still during the procedure, the vitrectomy was not successful. During a follow-up visit on April 20, 2017, Dr. Garcia-Valenzuela recommended that Lena undergo another vitrectomy under general anesthesia as soon as possible. From April 23 to May 1, 2017, Lena was admitted to the hospital for leukocytosis. During that time, she was evaluated by a cardiologist and was cleared to receive general anesthesia. However, on May 2, 2017, Dr. Garcia-Valenzuela again examined Lena and determined that she was blind in her right eye. As a result, Dr. Garcia-Valenzuela did not recommend any further surgery.

¶ 5 Georgiy did not attach a section 2-622 report to the initial complaint and instead filed an affidavit averring that he was unable to obtain a report prior to the expiration of the statute of limitations. On July 9, 2019, Georgiy filed a section 2-622 affidavit and a report from David M. Salvay, M.D., an ophthalmologist. The report only addressed the actions of Dr. Tsipursky and only examined the ophthalmological aspects of Lena's care. It did not mention or discuss Dr. Faier's involvement.

¶ 6 On July 9, 2019, Georgiy filed a first amended complaint against Dr. Tsipursky and Advanced Eye Care, with the section 2-622 affidavit and report attached. On June 7, 2020, Lena

died from causes unrelated to her eye surgery. Georgiy continued to prosecute the suit in his capacity as administrator of the Estate.

¶ 7    On October 13, 2021, after having deposed Drs. Tsipursky, Faier, and Garcia-Valenzuela, the Estate filed a second amended complaint adding Dr. Faier, FVAA, and Surgicare as defendants. In relevant part, the second amended complaint, which is the operative complaint for the issues on appeal, raised one count of medical malpractice against Dr. Faier; one count of medical malpractice against FVAA through Dr. Faier acting as its agent; two counts of medical malpractice against Surgicare through Drs. Faier and Tsipursky acting as its agents; and one count against Surgicare for failing to obtain Lena's informed consent, through Dr. Tsipursky acting as its agent. For the two counts relating to Dr. Faier, although each was titled as a "Medical Malpractice Survival Action," the Estate alleged that Dr. Faier's conduct amounted to gross negligence and that expert testimony and a section 2-622 report were, therefore, not necessary. Accordingly, the Estate attached the same section 2-622 affidavit and report that it had included with the first amended complaint. The report again only addressed issues relating to Dr. Tsipursky's care and did not mention or discuss Dr. Faier's actions.

¶ 8    On April 18, 2022, Dr. Faier filed a motion to dismiss under section 2-619 of the Code (735 ILCS 5/2-619 (West 2022)) on the grounds that the Estate had failed to comply with the requirements of section 2-622 for its claims against her. FVAA and Surgicare joined Dr. Faier's motion.

¶ 9    On April 25, 2022, Surgicare filed its own motion to dismiss under sections 2-619 and 2-1010 (735 ILCS 5/2-1010 (West 2022)) on the grounds that it was neither directly nor indirectly involved in the events at issue in the second amended complaint. Surgicare attached an affidavit

from its CEO, Brent Fitzgerald, averring that it was not involved in Lena's care and that neither Dr. Tsipursky nor Dr. Faier acted as its agent.

¶ 10    In its response to Dr. Faier's motion, the Estate asserted that the depositions of Drs. Faier, Tsipursky, and Garcia-Valenzuela collectively satisfied the section 2-622 requirement because their testimonies identified the reasons why a reasonable and meritorious cause for the action existed. In the Estate's view, the depositions spoke for themselves regarding the merits of its suit and no further professional report was necessary.

¶ 11    In its response to Surgicare's motion to dismiss, the Estate alleged that Surgicare held itself out as a skillful provider of surgical care and that neither Georgiy nor Lena had any way of knowing that Drs. Tsipursky and Faier were independent contractors and not agents of Surgicare. The Estate further asserted that Surgicare's patient consent form, which stated that Surgicare maintains personnel and facilities to assist physicians and surgeons and that generally those physicians and surgeons are independent contractors and not its agents, was ambiguous and confusing and also not signed by either Georgiy or Lena, creating a fact question regarding whether either should have known that Dr. Tsipursky was not Surgicare's agent. However, the Estate also admitted that it was Dr. Tsipursky who chose Surgicare as the location for Lena's surgery and that "[Lena's] Health Care Power of Attorney at the time [Georgiy] more likely than not relied on [Dr. Tsipursky] rather than Surgicare to provide ophthalmology surgical treatment to [Lena] for her cataract surgery at Surgicare." The Estate contended that, while Georgiy relied on Dr. Tsipursky, there was a question of fact as to whether Lena, due to her dementia, did as well, and that neither Lena nor Georgiy chose Dr. Faier to be Lena's anesthesiologist.

¶ 12 The circuit court entered an order on March 8, 2023, granting both motions to dismiss. Regarding Dr. Faier's motion, the court explained that over the course of three complaints the Estate had "failed to name any of the three moving Defendants in a Section 622 Report, either stating what standard of care was required of each or what breaches of such standards were committed by each," and that "[f]ailing to so file a proper 622 Report after three separate Complaint filings indicates that Plaintiff does not have good cause to name these entities as defendants, and the dismissals are thus with prejudice." Further, the court rejected the Estate's argument that the physicians' deposition testimonies could take the place of a section 2-622 report, and the court found that the testimonies also did not establish a meritorious cause of action against Dr. Faier, FVAA, or Surgicare.

¶ 13 As for Surgicare's motion, the court found that the Estate had failed to sufficiently plead the existence of an agency relationship between Surgicare and Dr. Tsipursky. Specifically, the court found that the Estate failed to rebut with any competent evidence Fitzgerald's affidavit disclaiming any involvement in Lena's care, other than merely citing to its own pleadings.

¶ 14 On March 9, 2023, the court entered an order under Supreme Court Rule 304(a) finding that there is no just reason to delay enforcement or appeal of its March 8 order. This appeal follows.

¶ 15 On appeal, the Estate raises what we view as four issues: (1) whether the deposition testimonies of Drs. Faier, Tsipursky, and Garcia-Valenzuela satisfied the requirements of section 2-622; (2) whether such a failure to comply with section 2-622 warranted dismissal with prejudice; (3) whether the Estate's claims against Dr. Faier should have nonetheless been allowed to proceed as ordinary negligence claims; and (4) whether the Estate sufficiently pleaded the existence of an

agency relationship between Surgicare and Dr. Tsipursky. We find the Estate's arguments on these issues to be without merit, and we will address them each in turn.

¶ 16    First, the Estate contends that the deposition testimonies of Drs. Faier, Tsipursky, and Garcia-Valenzuela were sufficient to satisfy the requirements of section 2-622 and that, as a result, dismissal of the Estate's claims against Dr. Faier for failure to comply with section 2-622 was not warranted. Section 2-622 requires a plaintiff in in any medical malpractice action to file an affidavit from the plaintiff or the plaintiff's attorney certifying, among other things, that they have "consulted and reviewed the facts of the case" with a qualifying health professional and that the health professional "has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action." 735 ILCS 5/2-622(a)(1) (West 2020). "In the event that multiple defendants are named in a single medical malpractice action, the statute requires that a separate health professional's written report shall be filed as to each defendant." *Mueller v. North Suburban Clinic, Ltd.*, 299 Ill. App. 3d 568, 573 (1998). "[O]ur review of the issue of whether a physician's report complies with section 2-622 is *de novo*." *Id.* at 572.

¶ 17    The Estate argues that the depositions satisfied the requirements of section 2-622 because Drs. Faier, Tsipursky, and Garcia-Valenzuela each met the statute's qualifications for rendering an opinion on the merits of a medical malpractice claim and because their testimonies demonstrate that there is a reasonable and meritorious cause for the filing of a medical malpractice action against Dr. Faier. However, regardless of whether those assertions are true, the physicians' deposition testimonies in this case do not satisfy the requirements of section 2-622 for the simple

reason that they do not contain a "determin[ation] *** that there is a reasonable and meritorious cause for the filing of such action."

¶ 18    The case of *Moyer v. Southern Illinois Hospital Service Corporation*, 327 Ill. App. 3d 889, 903 (2002), is illustrative of this issue. There, this court held that a plaintiff who was suing a nurse and her employing hospital could rely on the deposition testimony of a consulting physician in lieu of a written report to satisfy the requirements of section 2-622. However, unlike in the present case, the deposed physician in *Moyer* was not one of the named defendants and, importantly, the physician explained why the nurse's actions increased the risk of injury and opined that the nurse had deviated from the standard of care. *Id.* at 903. Thus, because the physician had rendered a determination that the nurse had not met the standard of care, the testimony contained the opinion of a qualifying physician that the plaintiff had a meritorious cause of action and, therefore, satisfied the requirements of section 2-622. *Id.*

¶ 19    In the present case, the Estate has not identified any portion of any of the three deposition testimonies in which any of the physicians explained what Dr. Faier's standard of care was or expressed an opinion on whether Dr. Faier deviated from that standard of care. The depositions lack that crucial aspect of a section 2-622 report, which is the opinion from a qualified expert determining that the plaintiff has a meritorious claim. Instead, the Estate's position requires that we make that determination ourselves. But courts are not physicians and are not experts in the various fields of medicine. That is precisely why section 2-622 exists, so that a qualified medical professional can tell the court that the plaintiff has a meritorious claim. See *DeLuna v. St. Elizabeth's Hospital*, 147 Ill. 2d 57, 75 (1992) ("By requiring litigants to obtain, at an early point, the opinion of an expert who agrees that a meritorious cause of action exists, the statute will help

ensure that only claims with some merit are presented."). The depositions of the physicians in this case do not satisfy that basic requirement. Accordingly, the circuit court did not err in finding that the deposition testimonies of Drs. Faier, Tsipursky, and Garcia-Valenzuela were insufficient to satisfy the requirements of section 2-622.

¶ 20    The next issue then becomes whether dismissal with prejudice was appropriate or whether the circuit court should have granted the Estate an opportunity to obtain a section 2-622 report concerning Dr. Faier's involvement in Lena's care. We review this question for an abuse of discretion. *Mueller*, 299 Ill. App. 3d at 572.

¶ 21    The Estate argues that the Code does not require a dismissal with prejudice on the basis of a technical deficiency in a pleading in a medical malpractice case. See *Hagood v. O'Conner*, 165 Ill. App. 3d 367, 371 (1988); see also *Calamari v. Drammis*, 286 Ill. App. 3d 420, 433–34 (1997) (collecting cases holding that it is an abuse of discretion to dismiss a claim with prejudice when the plaintiff had substantially complied with section 2-622 and had proposed amendments to cure any technical defects). However, the Estate's failure to comply with section 2-622 in this case is not due to a mere technical deficiency. Rather, the Estate's failure in this case is substantive. Indeed, the Estate affirmatively chose not to comply with section 2-622, stating in its second amended complaint that Dr. Faier's negligence was so readily apparent that no expert testimony was necessary and that, for that reason, it was not filing a section 2-622 report regarding Dr. Faier. Given that more than a year had already passed since Dr. Faier had been deposed by that point, we agree with the circuit court that the lack of a section 2-622 report addressing Dr. Faier is not a technical deficiency but rather indicated that the Estate did not have good cause to name Dr. Faier as a defendant. This is particularly true when contrasted with the fact that the Estate had filed a

comprehensive section 2-622 report addressing Dr. Tsipursky, demonstrating that it understood how to comply with section 2-622 and apparently had no trouble doing so. Accordingly, we do not see an abuse of discretion in the court's decision to dismiss the Estate's claims against Dr. Faier with prejudice.

¶ 22    The third issue in this appeal is whether the circuit court should have allowed the Estate's claims against Dr. Faier to proceed as ordinary negligence claims for which a section 2-622 report is not required. The Estate contends that no expert testimony is necessary to prove that Dr. Faier acted negligently in not allowing Lena to go under general anesthesia for an emergency vitrectomy despite having cleared her for general anesthesia earlier in the day. However, whether expert testimony is required is not the determining factor for whether a negligence claim is medical in nature and whether a section 2-622 report is, therefore, required. See 735 ILCS 5/2-622 (West 2020) (requiring a health professional report "[i]n any action *** in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice"). Indeed, "there are three types of negligence suits against providers of medical services: (1) malpractice suits requiring expert testimony; (2) malpractice cases not requiring expert testimony; and (3) negligence suits, essentially common-law in character, that happen to be directed against health care providers." *Woodard v. Krans*, 234 Ill. App. 3d 690, 705 (1992). Only the last of those three does not require compliance with section 2-622. *Id.* We have little trouble concluding that the Estate's allegations against Dr. Faier in this case do not fall under that third category. The issue is whether Dr. Faier acted negligently in refusing to allow the ninety-two-year-old Lena to be placed under general anesthesia after Lena's lungs had become congested. This is plainly a medical question outside of the ken of an average lay juror and not a common-law negligence issue, and

the Estate has not provided us with any authority suggesting differently. Thus, the circuit court did not err in requiring compliance with section 2-622.

¶ 23    The final issue in this appeal is whether the circuit court erred in dismissing the Estate's agency-based claims against Surgicare for failing to sufficiently plead the existence of an agency relationship. Although the Estate brought claims against Surgicare through alleged agency relationships with both Dr. Faier and Dr. Tsipursky, our affirmance of the dismissal of both claims against Dr. Faier on section 2-622 grounds leaves only the two agency-based claims involving Dr. Tsipursky at issue. Section 2-1010(a) of the Code provides that "[i]n any action *** in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, a party may, in lieu of answering or otherwise pleading, file an affidavit certifying that he or she was not directly or indirectly involved in the occurrence or occurrences alleged in the action." 735 ILCS 5/2-1010(a) (West 2022). In this case, Surgicare filed such an affidavit through its CEO, Brent Fitzgerald. It was then up to the Estate to oppose the dismissal by "show[ing] that the certifying party was directly or indirectly involved in the occurrence or occurrences alleged in the action." *Id.* § 2-1010(b).

¶ 24    In its response to Surgicare's motion to dismiss, the Estate alleged that Surgicare "held itself out to be reasonably skillful and careful in rendering surgical and/or anesthesia services and medical care and treatment" and that neither Georgiy nor Lena had any way of knowing that Dr. Tsipursky was an independent contractor and not an agent of Surgicare. The Estate further asserted that Surgicare's patient consent form, which stated that Surgicare maintains personnel and facilities to assist physicians and surgeons and that generally those physicians and surgeons are independent contractors and not its agents, was ambiguous and confusing and also not signed by

either Georgiy or Lena, creating a fact question regarding whether either should have known that Dr. Tsipursky was not Surgicare's agent. However, the Estate also admitted that it was Dr. Tsipursky who chose Surgicare as the location for Lena's procedure and that "[Lena's] Health Care Power of Attorney at the time [Georgiy] more likely than not relied on [Dr. Tsipursky] rather than Surgicare to provide ophthalmology surgical treatment to [Lena] for her cataract surgery at Surgicare." The Estate contended that, while Georgiy relied on Dr. Tsipursky to provide Lena's medical care, there was a question of fact as to whether Lena, due to her dementia, did as well.

¶ 25    "[U]nder the doctrine of apparent authority, a hospital can be held vicariously liable for the negligent acts of a physician providing care at the hospital, regardless of whether the physician is an independent contractor, unless the patient knows, or should have known, that the physician is an independent contractor." *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 524 (1993). The plaintiff must show that:

> " '(1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.' " *Id.* (quoting *Pamperin v. Trinity Memorial Hospital*, 144 Wis. 2d 188, 207–08 (1988)).

¶ 26    We find the Estate's allegations in support of the existence of an apparent agency relationship between Surgicare and Dr. Tsipursky to be severely lacking. The Estate has not made any specific allegations regarding how any actions of either Dr. Tsipursky or Surgicare created the

impression that Dr. Tsipursky was Surgicare's agent. Further, the Estate's own admission that Georgiy, acting as Lena's healthcare power of attorney, relied on Dr. Tsipursky rather than Surgicare to provide Lena's care defeats the third element of the test. While the Estate argues that it is nonetheless uncertain whether Lena also relied on Dr. Tsipursky rather than Surgicare, that question is irrelevant. The Estate admitted in its second amended complaint that at all times relevant to this action Lena's dementia "caused her to be cognitively impaired and incapable of managing her person and/or estate" and that Lena "could not comprehend her rights and/or the nature of the acts giving rise to this cause of action." And that is precisely why she had Georgiy acting as her healthcare power of attorney. Accordingly, only Georgiy's reliance is of any consequence. Because Georgiy relied on Dr. Tsipursky rather than Surgicare and because it was Dr. Tsipursky who chose Surgicare as the location for Lena's surgery, the Estate failed to sufficiently plead the existence of an apparent agency relationship. See *Pamperin*, 144 Wis. 2d 211–12 (explaining that there is no apparent agency when the patient enters a hospital seeking care from a specific physician rather than from the hospital). Therefore, the circuit court did not err in dismissing the agency-based claims against Surgicare.

¶ 27   For the foregoing reasons, we affirm the order of the circuit court dismissing the Estate's claims against Dr. Faier, FVAA, and Surgicare.

¶ 28   Affirmed.